**Chris D. STOLTZFUS and Irma H. Stoltzfus, Appellants,**

v.

**UNITED STATES of America.**

**Nos. 16774, 17124.**

United States Court of Appeals Third Circuit.

Argued June 7, 1968.

Decided July 31, 1968.

Rehearing Denied Sept. 26, 1968.

---

Richard E. Poole, Potter, Anderson & Corroon, Converse Murdoch, Wilmington, Del., for appellants.

John M. Brant, Dept. of Justice, Tax Division, Appellate Section, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee; Drew J. T. O'Keefe, U. S. Atty., of counsel.

Before McLAUGHLIN, STALEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is an appeal from a judgment of the district court denying appellant's ("taxpayer") [1] request for a refund of civil fraud penalties imposed for the taxable year 1954 pursuant to Section 6653 (b) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6653(b). The district court, sitting without a jury, determined that the government had sustained its burden of proving fraud and denied taxpayers the relief requested.[2] 264 F.Supp. 824 (E.D.Pa.1967).[3]

---

1. The real party to this suit is Mr. Stoltzfus. Mrs. Stoltfus is named as a party solely because a joint return was filed.

2. This case was tried before a judge who died before entering judgment. The parties stipulated that subject to objections contained in the record, the case should be decided by an assigned judge on the record earlier made. Such judge construed all the evidence most favorably to the plaintiff because he had not observed the witnesses. In our review of the record, we adopt the same approach.

3. Plaintiff also appeals the judgment denying a new trial.

We briefly narrate pertinent portions of the evidence as stipulated by the parties or adduced by the government in its case and not challenged by the taxpayer in his testimony.

Taxpayer was educated through the eighth grade. As a teenager he worked on his father's farm and later held odd jobs in automobile garage and repair shops until he went into business for himself. From 1944 through 1954 taxpayer was self-employed in a business consisting of crop spraying and dusting by airplane. In the furtherance of such business taxpayer directly engaged in negotiations with various federal and local governmental agencies concerning the purchase of airplanes. He also bid on and negotiated contracts for crop spraying and dusting. In 1954 taxpayer entered the airplane parts business.

The taxpayer filed income tax returns for the taxable years 1941 and 1942 and paid a small amount of tax. For the taxable year 1943, he filed an estimated tax return and paid the first installment due thereon. From 1943 through 1958

the taxpayer, although admittedly receiving income from various sources, filed no tax returns. Late returns for these years were ultimately filed in 1959 and 1960.[4] The state of the record does not permit a finding as to why taxpayer finally filed returns. The taxes due were subsequently paid with penalties and interest. Taxpayer then filed a timely claim for refund of the fraud penalty paid for the taxable year 1954. The District Director of Internal Revenue disallowed the claim in full. This action in the district court followed.[5]

We first note certain pertinent legal principles. "Fraud," as that term is used in the statutory provisions authorizing the imposition of penalties upon a taxpayer when "* * * any part of an underpayment of tax required to be shown on a return is due to fraud, * * * *" means intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing. Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958). Even though a timely return has not been filed,

4. They show, inter alia, the following:

| Year | Gross Receipts From Business | Total Gross Income | Tax Due Per Return |
|------|------------------------------|--------------------|--------------------|
| 1943 | Net worth method used ........ | $ 2,177.17 | $ 56.04 |
| 1944 | Net worth method used ........ | 1,842.85 | 35.00 |
| 1945 | Net worth method used ........ | 3,155.60 | 142.00 |
| 1946 | Net worth method used ........ | (2,559.88) | –0– |
| 1947 | Net worth method used ........ | 2,553.98 | –0– |
| 1948 | Net worth method used ........ | 3,922.23 | 88.00 |
| 1949 | Net worth method used ........ | 1,273.18 | –0– |
| 1950 | Net worth method used ........ | 1,374.20 | –0– |
| 1951 | Net worth method used ........ | 8,097.42 | 752.28 |
| 1952 | Net worth method used ........ | 12,232.96 | 1,781.70 |
| 1953 | Net worth method used ........ | 11,119.80 | 1,354.36 |
| 1954 | $ 71,930.04 ............... 2,596.49—Farm | 6,925.83 | 596.50 |
| 1955 | 287,437.65 ............... 1,602.79—Farm | 48,336.08 | 16,697.73 |
| 1956 | 422,489.59 ............... –0– —Farm | 101,842.56 | 50,838.59 |
| 1957 | 443,071.92 ............... –0– —Farm | 19,609.82 | 3,477.95 |
| 1958 | 201,147.39 ............... –0– —Farm | (33,544.60) | –0– |

5. In 1961 an Information was filed by the United States charging taxpayer with the misdemeanor of willful failure to file income tax returns for 1955, 1956 and 1957. A jury rendered a verdict of guilty on all three years. Although no income tax returns had been filed for previous years beginning with 1943, the statute of limitations prevented prosecution relative thereto.

a taxpayer may be found to have fraudulently intended to avoid taxes. Powell v. Granquist, above. The burden of proving fraud when the taxpayer, as in this case, is suing for a refund, rests upon the government. Armstrong v. United States, 354 F.2d 274, 173 Ct.Cl. 944 (1965). To sustain this burden the government must produce "* * * some convincing affirmative indication of the required specific intent." Cirillo v. C. I. R., 314 F.2d 478, 482 (3rd Cir. 1963). This burden may be met by circumstantial evidence. Powell v. Granquist, above. Although the proven failure of a taxpayer to file returns for an extended period of time is not enough, in and of itself, to justify the imposition of the fraud penalty, it is persuasive evidence of an intent to defraud the government. Cirillo v. C. I. R., above; Powell v. Granquist, above.

We turn to an evaluation of the undisputed evidence in light of these legal principles. The evidence concerning the entire period of default (1943–1958) was relevant to taxpayer's right to recover the fraud penalties imposed and paid for in 1954. The government's uncontroverted evidence may be summarized as follows:

Taxpayer, although limited in formal education, had extensive business experience. His business activities caused him to be directly engaged in substantial negotiations with federal and local governments leading to contracts for crop dusting and spraying. These contracts were entered into by the taxpayer without employing an attorney. They involved large sums of money and warrant an inference that a keen awareness of business and financial matters was demanded. Further, taxpayer was aware of his obligation to file returns, report his income and pay taxes. For 1941 and 1942 he timely filed his returns, and he also filed a 1943 estimated tax return on which he paid one installment. From 1943–1958 he failed to file returns. His total gross income, as ultimately reported on returns filed for this period, dictates not only an inference that taxpayer knew at the time that he was obligated to file a return for 1954, but also that he knew he owed taxes for that year. Certainly the fact finder was entitled to so conclude. The material contained in his tax return, as ultimately filed for 1954, when considered with the other uncontroverted matter in the record, fully discharged the government's quantitative and qualitative burden of creating an issue of fact as to whether the taxpayer was chargeable with such fraud under the statute for the year 1954. The "convincing affirmative indication" is found in the government's showing that the taxpayer had no contemporaneous reasonable basis for believing that taxes were not owed.[6]

We look now to the taxpayer's evidence to determine whether it so diluted the government's case that the matter was no longer proper for decision on a factual basis.

To justify his failure to file for the many years involved, the taxpayer testified that his failure to pay the second installment on his 1943 estimated tax was precipitated by financial adversity, and his continued failure to file was prolonged by ignorance and fear of what he called "summary criminal prosecution." Taxpayer argues that these factors, plus the adequacy of his records and his ultimate cooperation with revenue authorities, as found by the district court, fully verify his own statement that he intended to eventually file tax returns for the years in question. We disagree. His statement that one of the reasons for his continued failure to file returns was fear of criminal prosecution was in itself an admission that he did not file in order to conceal his prior years defalcations. See Fred N. Acker, 26 T.C. 107 (1956). By not filing a return in each year subse-

---

6. Cf. Cirillo v. C. I. R., 314 F.2d 478, 483 (3rd Cir. 1963). We do not understand that the citation of First Trust & Savings Bank of Davenport, Iowa v. United States, 206 F.2d 97 (8th Cir. 1953), in *Cirillo* was intended to be an adoption of the criminal law standard that the government must prove an affirmative "act."

quent to 1943, taxpayer attempted to conceal his failure to file for the prior years. We fail to see how such conduct indicates an innocent state of mind. Quite to the contrary, we find such conduct is some evidence of an intent to fraudulently avoid paying taxes knowingly due. In these premises, the taxpayer's testimony, presumably accepted, that throughout the entire period he intended to file returns did not dilute the convincing proof of fraud adduced by the government.

We are satisfied that the required evidentiary showing of the government was reinforced rather than weakened by the taxpayer's own evidence. The district court, as the fact finder, was therefore fully warranted in concluding that the government sustained its burden of proving fraud. And this is so even if we put aside the "clearly erroneous" review standard because the fact finder here did not see and hear the witnesses.

Taxpayer argues further that the district court erred in refusing to grant his motion for a new trial. This motion alleged as error the trial judge's refusal to permit re-direct examination of the taxpayer and his refusal to permit the taxpayer to call additional witnesses. The record shows that the taxpayer was offered more than a full opportunity to adduce testimony and present evidence. Even so, if we were convinced that the court's closing of the case might have worked any material prejudice to the taxpayer we would reverse. However, the approach taken by the judge who decided this case below indicates that the taxpayer got the "benefit" of all relevant disputed matters. There is no suggestion that further evidence would have challenged any of the undisputed facts relied upon by the district court and by us in deciding this case. We think a new trial was therefore correctly denied.

The judgments of the district court will be affirmed.

Judge McLAUGHLIN dissents and thinks that the case should be remanded to the District Court for a new trial on the merits.