HOWARD C. PATTON and BEVERLY A. BUTLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RONALD E. KUNKEL and PHYLLIS M. KUNKEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patton v. Commissioner
Docket Nos. 6046-79, 12711-79.
United States Tax Court
T.C. Memo 1981-385; 1981 Tax Ct. Memo LEXIS 360; 42 T.C.M. (CCH) 488; T.C.M. (RIA) 81385; July 28, 1981. Lawrence S. Branton, for the petitioners. Kevin M. Bagley, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Addition to Tax
Docket
(sec. 6653(b),
No.
Petitioners
Year
Deficiency [1]
I.R.C. 1954)
6046-79
Howard C. Patton and
1972
$ 664
$ 332
Beverly A. Butler
1973
1,096
548
12711-79
Ronald E.Kunkel and
1972
436
218
Phyllis M. Kunkel
1973
291
1974
720
1975
12
*361 In an amendment to the answer in docket No. 12711-79, respondent alleges that petitioners Ronald E. Kunkel (hereinafter Ronald) and Phyllis M. Kunkel (Phyllis) are liable for an increased deficiency for 1973 in the amount of $ 54 and for a corresponding increase in the section 6653(b) [1] addition to tax (i.e., $ 27). Respondent has conceded on brief that no section 6653(b) addition to tax is due for 1975 in docket No. 12711-79 and that petitioners are entitled to an overpayment for that year in the amount of $ 23. Respondent has further conceded on brief that the evidence does not support a finding of fraud against Beverly A. Butler or Phyllis M. Kunkel. Petitioners Howard C. Patton (Howard) and Beverly A. Butler (Beverly) have conceded that they are liable for the deficiencies determined by respondent in docket *362 No. 6046-79. Ronald and Phyllis have conceded liability for the increased deficiency for 1973 alleged by respondent in the amendment to the answer in their case. After these and other concessions by the parties, the issues remaining for decision are: 1. Whether any part of the underpayment of taxes by Howard for 1972 and 1973, and by Ronald for 1972, 1973, and 1974, was due to fraud within the meaning of section 6653(b); and 2. Whether the assessment of a deficiency against Ronald and Phyllis for 1972 is barred by the statute of limitations. FINDINGS OF FACT Howard and Beverly, who were husband and wife during 1972 and 1973, filed joint Federal income tax returns for those years. At the time they filed the petition in docket No. 6046-79, Howard and Beverly resided at separate addresses in El Cajon, California. Ronald and Phyllis, husband and wife, filed joint Federal Income tax returns for 1972, 1973, and 1974. At the time the petition in docket No. 12711-79 was filed, they resided in Escondido, California. Both Howard and Ronald have been employed in the construction industry for a number of years. Neither of them had ever been self-employed prior to 1976. *363 During 1972 and 1973, Howard was employed by the Heritage Hills Corporation (Heritage) as a dry-wall foreman. During those years, and in 1974, Ronald was employed by Heritage as a general superintendent of construction. In return for the services they performed for Heritage, Howard and Ronald (as well as other employees of Heritage) received wages that were paid by two different types of checks. The first type of check (the yellow check) received by Howard and Ronald was a regular payroll check to which a payroll stub was attached showing the amounts withheld by Heritage for Federal income and social security taxes, as well as certain other miscellaneous items. [2] The second type of check (the green check) that they received was also a payment for wages, but there was no withholding of taxes from it. During the years in question, Howard and Ronald each received gross wages from Heritage, paid by yellow and green checks, as set forth in the following tables: HOWARD
1972
Yellow
Green
Gross
Month
Checks
Checks
Wages
January
$ 1,098.00
$ 1,098.00
February
658,80
550.00
1,208.80
March
587.20
615.00
1,202.20
April
500.00
500.00
May
658.80
658.80
June
1,464.00
450.00
1,914.00
July
768.90
450.00
1,218.90
August
1,189.50
100.00
1,289.50
September
883.00
883.00
October
390.00
200.00
590.00
November
150.00
150.00
December
100.00
100.00
Total
$ 6,815.20
$ 3,998.00
$ 10,813.20
*364 1973
Yellow
Green
Gross
Month
Checks
Checks
Wages
January
February
780.00
450.00
1,230.00
March
1,560.00
1,560.00
April
1,170.00
400.00
1,570.00
May
1,842.00
800.00
2,642.00
June
448.50
750.00
1,198.50
July
650.00
650.00
August
930.00
930.00
September
780.00
200.00
980.00
October
195.00
500.00
695.00
November
585.00
544.00
1,129.00
December
770.25
292.50
1,062.75
Total
$ 8,130.75
$ 5,516.50
$ 13,647.25
RONALD
1972
Yellow
Green
Gross
Month
Checks
Checks
Wages
January
February
March
April
May
June
July
240.00
240.00
August
1,200.00
1,200.00
September
900.00
641.46
1,541.46
October
975.00
330.17
1,305.17
November
975.00
330.00
1,305.00
December
975.00
699.62
1,674.62
Total
$ 5,265.00
$ 2,001.25
$ 7,266.25
1973
Yellow
Green
Gross
Month
Checks
Checks
Wages
January
$ 1,750.00
$ 1,750.00
February
1,400.00
1,400.00
March
1,050.00
360.83
1,410.83
April
1,050.00
356.29
1,406.29
May
1,475.00
375.00
1,850.00
June
1,500.00
1,500.00
July
1,500.00
1,500.00
August
1,875.00
200.00
2,075.00
September
1,125.00
383.64
1,508.64
October
1,500.00
1,500.00
November
1,500.00
383.60
1,883.60
December
1,125.00
481.00
1,606.00
Total
$ 16,850.00
$ 2,540.36
$ 19,390.36
*365 1974
Yellow
Green
Gross
Month
Checks
Checks
Wages
January
$ 1,500.00
$ 375.00
$ 1,875.00
February
750.00
378.00
1,128.00
March
375.00
1,621.76
1,996.76
April
1,551.12
1,551.12
May
1,925.40
1,925.40
June
750.00
765.65
1,515.65
July
375.00
386.85
761.85
August
September
October
November
December
Total
$ 3,750.00
$ 7,003.78
$ 10,753.78
Throughout their working careers, Howard and Ronald have generally relied upon the wage and tax statements (W-2 forms) that they have received from their employers in determining the amount of income to be reported on their Federal income tax returns. For each of the years during which Howard and Ronald were employed by Heritage, they received W-2 forms from Heritage on which only those amounts that had been paid to them by yellow checks were reported as compensation. Neither Howard nor Ronald ever received any type of statement from Heritage as to the amount of wages paid to them by green checks, an neither of them kept records of the amounts paid by green checks. On their joint Federal income tax returns for 1972 and 1973, Howard and Beverly included in their gross income *366 the entire amount that Heritage paid to Howard by yellow checks in those years. However, no part of the wages paid to Howard by green checks was included in their gross income for 1972 or 1973. Similarly, Ronald and Phyllis included all sums paid to Ronald by yellow checks in 1972, 1973, and 1974 as part of the gross income shown on their joint Federal income tax returns for those years, but they did not report any of the amounts paid by green checks. The system under which Heritage paid wages by two different types of checks was initiated by Richard Raulston (Raulston), who was the president of that corporation during the years in question. The system was devised to appease certain subcontractors who "wanted to be paid separately from the regular check" and to enable Heritage to evade some of the payroll taxes it would otherwise have been required to pay. [3] Under the system, an employee could request a green check by writing the word "green" on his timecard, but he might receive a green check even though no such request had been made. Both Howard and Ronald Requested green checks on occasion, and they also received green checks without asking for them. *367 Sometime subsequent to the years in question, Howard was interviewed on several occasions by Special Agent Thomas Stack (Stack) and Revenue Agent Charles Breese (Breese) of the Internal Revenue Service in connection with an investigation into the Federal income and employment tax liabilities of Heritage. During the first interview, Stack and Breese sought to determine whether Howard had any knowledge concerning the two-check system used by Heritage. Howard told Stack and Breese that he had received regular payroll checks from Heritage, that all amounts he had received were shown on his W-2 forms, that he had reported all amounts received as income, and that he knew nothing about any other check system. At a second interview, Howard again denied that he knew anything about a two-check system. However, subsequent to the first interview, Stack and Breese had obtained from Heritage the yellow and green checks that had been issued to and endorsed by Howard. When confronted with these canceled checks, Howard became very upset and proceeded to explain the two-check system. He told Stack and Breese that he had complained to Raulston about it and had expressed a desire to have all *368 taxes properly withheld. [4] He also told them that Raulston had warned him not to declare the green checks on his tax returns because if any of the employees did so "the whole deal could be blown up." When Stack and Breese asked Howard whether all of the income that he had received from Heritage had been reported on the W-2 forms issued to him, he stated that he did not know, but he had suspected that they included only the yellow check income. Stack and Breese later met with Howard for a third time. The purpose of this meeting was to have Howard sign, under oath, an affidavit they had prepared based on the information that he had previously given them. After reading the affidavit, which was concerned primarily with statements made at the second interview, Howard disavowed it. He told Stack and Breese that the statements he had made at the second interview were erroneous. Ultimately, however, Howard admitted that the affidavit was correct and he signed it after making some minor changes. Ronald was interviewed twice by Stack and Breese during the investigation of Heritage's tax liabilities. During the *369 first interview, Ronald admitted that he had received green checks, and he explained how the two-check system worked. He told Stack and Breese that he had questioned Raulston about the failure to withhold from the green checks, but was told not to worry because a certain amount of wages could be paid without withholding. He further stated to them that he knew that the W-2 forms that he had received from Heritage did not include the amounts paid by green checks. At the second interview, he signed an affidavit prepared by Stack and Breese on the basis of the statements that he had previously made. OPINION The primary issue for decision is whether any part of the underpayment of taxes by Howard for 1972 and 1973, and by Ronald for 1972, 1973, and 1974, was "due to fraud" within the meaning of section 6653(b). Therefore, we must determine whether Howard and Ronald understated their respective incomes in each of the years in question with the specific purpose to evade a tax believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), *370 affg. a Memorandum Opinion of this Court. Respondent has the burden of proving, by clear and convincing evidence, that Howard and Ronald understated their incomes with such a purpose. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure.
After carefully considering the record, we find that respondent has shown by clear and convincing evidence that Howard fraudulently underpaid his taxes for each of the years 1972 and 1973. However, with respect to Ronald, we find that respondent has failed to carry his burden of proving a fraudulent underpayment as to 1972, 1973, or 1974. Howard testified that he did not know that the green check income was taxable to him and that he had been assured by Raulston that he need not worry about paying taxes on that income. However, in light of the statements that Howard made to Stack and Breese during their investigation of the Federal tax liabilities of Heritage, we do not find such testimony to be credible. We think it clear that Howard knowingly failed to report as income the amounts paid to him by green checks in 1972 and 1973. When confronted with canceled green checks that he had endorsed, Howard told Stack and Breese *371 that he had complained about the two-check system and had told Raulston that he wanted all of his taxes withheld. Howard also told them that Raulston had responded by warning that the green checks should not be reported as income in order to ensure that the two-check scheme would not be exposed. [5] Clearly, Howard knew when he received the green check income that it was taxable and that it should have been reported as income. We can only conclude that Howard deliberately failed to report the green check income. As a further indication of Howard's intent, we note that he initially denied to Stack and Breese that he had any knowledge of the two-check system. Then, when confronted with canceled green checks, he changed his story and explained the system to them. Because Howard testified that he did not make any statements to protect Raulston, he must have intended to mislead Stack and Breese with respect to his receipt of the green check income. We are aware that the amounts of Howard's omitted income are relatively small. That is a factor *372 which has been weighed in reaching our decision, but it is a consideration which carries greater weight in cases where the Commissioner has reconstructed a taxpayer's income by use of indirect methods. In such reconstructions there is a margin for error. In this case, the amounts of the omissions were shown precisely--by establishing the total amounts of the green checks each year. Those amounts represented omissions of about 33 percent and 40 percent of Howard's income for 1972 and 1973, respectively. We think the evidence clearly shows that they were deliberately and purposefully omitted from Howard's returns. We see no realistic alternative to the finding that the omissions were fraudulent. As to Ronald, the evidence of record is not as strong as it is in Howard's case. Ronald told Stack and Breese that he knew that the W-2 forms that he had received from Heritage did not include green check income. [6] However, he also told them (and testified at the trial) that Raulston had assured him that a certain amount of wages could be paid without withholding. In light of such an assurance, Ronald may well have believed that the green checks were "nontaxable" in the sense that sufficient *373 amounts were being withheld from yellow checks to satisfy his tax liabilities. [7] We infer that Ronald understood from his conversation with Raulston that there should be no withholding on an amount equal to his personal and dependency exemption deductions. Certainly the evidence is not clear and convincing to the contrary. There are several factors, such as Ronald's testimony that he knew he had earned a great deal more income than was shown on his W-2 form for 1974, that give us doubts as to whether Ronald in fact entertained such a belief. However, on the record before us, we do not find the clear and convincing evidence necessary to enable us to conclude that Ronald omitted from his income the amounts paid by green checks with the specific purpose to evade a tax believed to be owing. Respondent has conceded that, absent a finding of fraud, the statute of limitations (sec. 6501) bars the assessment of any deficiency against Ronald and Phyllis for 1972. Accordingly, we hold that they are not liable for the deficiency determined by *374 respondent in docket No. 12711-79 with respect to 1972. To reflect the foregoing, Decision will be entered for the respondent in docket No. 6046-79. Decision will be entered under Rule 155 in Docket No. 12711-79. Footnotes
1. Underpayments of taxes for 1973, 1974, and 1975, in the respective amounts of $ 581, $ 1,440, and $ 23, were paid by petitioners Ronald E. and Phyllis M. Kunkel prior to the issuance of a notice of deficiency to them.↩
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. Hereinafter, when we refer to amounts paid by yellow checks, such amounts will include both the face amount of the checks and the amounts withheld by Heritage.↩
3. Raulston pleaded guilty and was convicted of one count of an indictment charging him with willfully and knowingly subscribing to a false income tax return in violation of sec. 7206(1).↩
4. Howard first spoke to Raulston about the green checks in 1972.↩
5. Raulston testified that he does not recall speaking to either Howard or Ronald about the green checks during the years in question.↩
6. We note that Ronald fully cooperated with Stack and Breese. ↩
7. Compare Connor v. Commissioner, T.C. Memo. 1977-121↩.