GERARD L. MEYER and GLORIA H. MEYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meyer v. Commissioner
Docket No. 1189-78.
United States Tax Court
T.C. Memo 1981-676; 1981 Tax Ct. Memo LEXIS 67; 42 T.C.M. (CCH) 1738; T.C.M. (RIA) 81676; November 24, 1981. Ira M. Burman and Theodore A. Sinars, for the petitioners. Allan E. Lang, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 2,416.30 in petitioners' Federal income tax for 1969 together with an addition to tax in the amount of $ 1,208.15 under section 6653(b). [1] Two issues are presented for decision: *68 1. Whether petitioner Gerard L. Meyer received $ 6,667 in 1969 in return for his favorable vote on a zoning request pending before the Board of Trustees of the Village of Hoffman Estates, Illinois; and, if so, 2. Whether respondent has shown by clear and convincing evidence that petitioners' failure to report the alleged $ 6,667 receipt as income (1) caused their income tax return for 1969 to be "false or fraudulent" within the meaning of section 6501(c)(1) and (2) caused part of the underpayment of tax for 1969 to be "due to fraud" within the meaning of section 6653(b). FINDINGS OF FACT Petitioners Gerard L. Meyer and Gloria H. Meyer, husband and wife, were legal residents of Palatine, Illinois, when they filed their petition. They filed their joint Federal income tax return for 1969 with the Internal Revenue Service Center, Kansas City, Missouri. The issues here presented arise from the alleged activities of Gerard L. Meyer, and he will be referred to herein as petitioner. From 1960 through 1964, Edward Pinger (Pinger) was the mayor of the Village of Hoffman Estates, Illinois (Hoffman Estates). From 1964 through 1969, he was a member of the Zoning Board of Appeals *69 or the Planning and Zoning Commission of Hoffman Estates. The Planning and Zoning Commission had responsibility for reviewing zoning matters and making recommendations to the Board of Trustees of Hoffman Estates. From 1965 through April 1969, petitioner served as a member of the Board of Trustees. The Board of Trustees at that time consisted of Mayor Roy L. Jenkins (Jenkins) and trustees Howard J. Noble (Noble), James L. Sloan (Sloan), Herbert C. Gibson (Gibson), petitioner, and two other individuals named Franck and Cowins. From 1948 until about 1977, a corporation known as Admiral Builders was engaged in the construction of homes and in commercial development in Chicago and the surrounding suburbs. In about 1960, Admiral Builders bought 120 acres of land which bordered Hoffman Estates on one side and the Village of Schaumbert, Illinois, on the other. Representatives of both villages approached Irving Rootberg (Rootberg), president of Admiral Builders, regarding possible annexation, and he ultimately agreed in 1960 to annexation by Hoffman Estates. Rootberg thought he had an understanding with Hoffman Estates on zoning and sewer and water connections for the 120 acres but *70 was later told that he would be required to satisfy the local school board. The school board first demanded a contribution of 8 acres and later 16 acres for a school site. Other zoning and utility connections problems ensued. Finally, in 1967 Gibson arranged a meeting with Rootberg and some of the other Hoffman Estates trustees to discuss the requested rezoning of the Admiral Builders land. Three or 4 days later, Pinger contacted Rootberg and told him that the trustees wanted $ 1,000 per acre for approval of the zoning request. After some negotiations, Rootberg became convinced that he would not receive the needed zoning unless he paid the requested sum. He then agreed to, and did, pay $ 20,000 for the favorable rezoning of 20 acres of the land. The rezoning was authorized on November 9, 1967, and on the same day Rootberg paid the $ 20,000 to Pinger. This payment was divided equally among six individuals--Jenkins, Gibson, Sloan, Noble, Pinger, and petitioner. Trustees Franck and Cowins did not share in the distribution. In early 1968, Admiral Builders sought rezoning of an additional 20 acres. At their March 14, 1968, meeting, the trustees of Hoffman Estates voted to *71 grant the request. After the meeting, Pinger by prearrangement went to Rootberg's office where he collected $ 20,000 in currency. Pinger kept one-sixth of the collection for himself and divided the remainder equally between four board members (Gibson, Sloan, Noble, and petitioner) and Jenkins. In late 1968, Rootberg attempted to have another 40 acres rezoned, and Pinger told him he would be required to pay $ 40,000. Rootberg tried unsuccessfully to negotiate a lower figure, stating that he did not have as much as $ 40,000. In January 1969, Rootberg paid Pinger $ 28,000 and, a few weeks later, $ 12,000 for the zoning approval. In April 1969, Rootberg also paid $ 5,000 to Pinger to obtain zoning approval for a gasoline station. Subsequently, a criminal investigation was undertaken, and on October 26, 1973, a 23-count indictment was returned, naming Jenkins, Noble, Sloan, Gibson, Pinger, petitioner, and others. On December 5, 1973, petitioner entered a plea of guilty to a count charging him with having filed an income tax return for 1968 containing a false statement of the amount of his gross income. Petitioner was convicted on his plea of guilty and sentenced to a 6-month *72 prison term. The notice of deficiency issued to petitioner on November 4, 1977, determined deficiencies in petitioners' income taxes for 1967, 1968, and 1969. For 1967, it was determined that petitioner received unreported income in the amount of $ 3,334 from Admiral Builders. For 1968, it was determined that petitioner received unreported income in the amounts of $ 3,334 from Admiral Builders and $ 5,000 from a company designated as Kaufman and Broad, a total of $ 8,334. For 1969, it was determined that petitioner received unreported income in the amount of $ 6,667 from Admiral Builders. The notice of deficiency further determined that no part of the underpayment by petitioner Gloria H. Meyer was due to fraud. The petition filed in the instant case raises no issues with respect to 1967 and 1968. The determined deficiencies and additions to tax for those two years have been conceded by petitioner and paid in full. The petition alleges, however, that respondent erred in determining that petitioner received unreported taxable income from Admiral Builders in 1969, alleges that the statute of limitations has expired on the assessment of a deficiency for 1969, and denies that *73 any part of the deficiency was due to fraud. OPINION The notice of deficiency was mailed to petitioner on November 4, 1977, well beyond the 3-year limitations period on assessments for 1969, prescribed by section 6501(a). [2] To lift the bar of the 3-year statute of limitations, respondent relies upon section 6501(c)(1) [3] which provides that an assessment may be made at any time in the case of a false or fraudulent income tax return. Respondent's answer alleges that petitioner, as a member of the Board of Trustees of Hoffman Estates, received $ 6,667 from Admiral Builders [4] in 1969 for favorable rezoning of certain land and that his failure to report that amount as income was fraudulent with intent to evade tax. *74 The burden of proof rests with respondent to show that petitioner's income tax return for 1969 was fraudulent within the meaning of section 6501(c)(1). Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. To carry that burden, respondent must prove that petitioner acted with the specific intent to evade a tax believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Ross Glove Co. v. Commissioner, 60 T.C. 569, 608 (1973). We hold that respondent has failed to carry his burden. On the issue of whether petitioner shared in the $ 40,000 Admiral Builders payment to Pinger, we are faced with a direct conflict in the testimony. Rootberg testified that he paid Pinger $ 28,000 in January 1969 for the 40-acre rezoning approval and tried but failed to get him to accept that amount as sufficient. Pinger insisted on the full $ 40,000. Rootberg testified that he paid Pinger the additional $ 12,000 a few weeks later. Pinger testified that he received the $ 40,000 and divided it among the entire group of six individuals, including petitioner, who had shared the other bribes. He testified that he paid petitioner *75 his share--$ 6,667. Petitioner freely and frankly admitted that he received his share of the 1967 and 1968 briebes but emphatically denied that he received the $ 6,667 in 1969. He testified that prior to the 1969 vote on the rezoning of the 40 acres, Pinger told him that: "Mr. Rootberg was strapped for cash and that we should give him a pass on the 40 acres because of the previous 40 acres." In the light of the conceded history of bribery activities of Rootberg, Pinger, and petitioner, we cannot decide with any great degree of assurance whose testimony to accept as true. Those activities leave very little to commend any one of these witnesses in terms of truth and veracity. There are certain circumstances, however, which lead us to accept petitioner's version of the facts concerning the 1969 Rootberg payments and to hold that respondent has not established by clear and convincing evidence that petitioners' income tax return for 1969 was false or fraudulent. Prior to the indictment of petitioner, Pinger, and others, Pinger was interviewed by special agents of the Internal Revenue Service on August 16, 1973. In his statement to the agents, he described numerous bribes, including *76 the ones in 1967 and 1968 from Admiral Builders, that he, the mayor, and the four trustees of Hoffman Estates had received. He stated that he had divided the 1967 and 1968 Admiral Builders payments between Jenkins, Noble, Sloan, petitioner, and himself. [5] He did not mention the 1969 Admiral Builders payment. The special agents then asked what other payments he had received in connection with Hoffman Estates zoning changes or favors, and, according to the agent's notes: "He stated that he received no other payments of any type while he was mayor or while he was on the zoning board." The fact that Pinger sought to conceal the $ 40,000 Admiral Builders bribery payment in 1969 sets it apart. He no doubt knew that petitioner and the other individuals with whom he shared bribes would also be interviewed and that they might not confirm his statement. Special agents of the Internal Revenue Service interviewed Pinger again on October 12, 1973, and asked him specifically about the receipt of $ 40,000 from Rootberg in 1969. Initially, he stated he *77 did not recall any $ 40,000 payment, but he finally admitted that he received the money. He stated that he had divided it between Jenkins, Noble, Sloan, Gibson, petitioner, and himself. He gave no explanation of why he had concealed the payment at his initial interview. In this connection, Rootberg testified that he had doubts at the time that all the 1969 payments were divided among the entire group who had shared the other bribes. After petitioner pleaded guilty on December 5, 1973, but before he was sentenced, he was interviewed by special agents of the Internal Revenue Service. The agents told him they had statements from others who had been indicted, giving the facts and figures on the bribes, and invited him to tell them what he knew. Petitioner told them of the 1967 and 1968 bribes and of the 1969 receipt of $ 1,000 for the rezoning of a gasoline station site. He denied any recollection of receiving a 1969 payment for rezoning 40 acres and told the agents that Pinger had explained to him that Rootberg was strapped for cash and could not pay for the rezoning of the 40 acres. At the time he gave this statement, petitioner was awaiting sentence for his conviction on his *78 plea of guilty. He was aware that his statement would be taken into account in recommending his sentence. Petitioner testified at the trial of the instant case that the agents did not tell him that they believed he had shared in the 1969 payment of $ 40,000. He volunteered other briberies which had occurred prior to 1969 of which the agents apparently were not aware. Since he knew that the agents had statements from the others involved in the briberies, it seems unlikely that petitioner would have run the risk of leaving the impression at that point that he was concealing other bribes. In the light of all the testimony, we are not convinced that petitioner shared in Rootberg's 1969 payment of $ 40,000 to Pinger. We hold that respondent has failed to show that petitioners' 1969 return was false or fraudulent. Section 6501(c)(1) does not apply, and the bar of the 3-year statute of limitations prescribed by section 6501(a) has not been lifted. The notice of deficiency was not timely mailed. [6]
To reflect the foregoing, Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. ↩
3. Sec. 6501(c)(1) provides as follows: (c) Exceptions.-- (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. ↩
4. Respondent made no determination and does not here contend that the $ 1,000 admittedly received by petitioner in connection with the gasoline station rezoning request was omitted from petitioner's income tax return for 1969.↩
5. In this statement, he did not list Gibson as one of the recipients but did so in the Oct. 12, 1973, interview referred to below.↩
6. Having decided the case on this ground, we need not deal with the other issues in the case.↩