ADAK CARTING, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; STEPHEN LoMANGINO and JEAN LoMANGINO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adak Carting, Inc. v. Commissioner
Docket Nos. 13383-78, 14605-79.
United States Tax Court
T.C. Memo 1983-531; 1983 Tax Ct. Memo LEXIS 255; 46 T.C.M. (CCH) 1229; T.C.M. (RIA) 83531; August 29, 1983. John R. Serpico and Shlomo Aaron Beilis, for the petitioners. Lewis R. Mandel, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: In these consolidated cases, respondent *257 determined the following deficiencies in petitioners' Federal income taxes and additions to tax: Addition to Tax
Docket No.
Petitioner
Year
Deficiency
Section 6653(b) [1]
13383-78
Adak Carting, Inc.
6/30/71
$27,485.96
$13,742.98
6/30/72
30,709.90
15,354.95
14605-79
Stephen LoMangino &
12/31/70
13,656.50
6,828.25
Jean LoMangino [2]
12/31/71
31,501.90
15,750.95
12/31/72
14,770.19
7,385.09
The issues for decision are: 1) Whether petitioner Adak Carting, Inc. (hereinafter "Adak") filed a fraudulent income tax return for its fiscal years ending June 30, 1971, and June 30, 1972; 2) Whether petitioner Adak omitted in excess of 25 percent of its gross income from its income tax return for its fiscal year ending June 30, 1972; 3) Whether petitioner *258 Adak failed to report certain gross income in its fiscal years ending June 30, 1971, and June 30, 1972; 4) Whether petitioner Adak incurred certain unclaimed deductible business expenses during its fiscal years ending June 30, 1971, and June 30, 1972; 5) Whether petitioners Stephen LoMangino and Jean LoMangino filed fraudulent income tax returns for the taxable years 1970, 1971, and 1972; and 6) Whether petitioners Stephen LoMangino and Jean LoMangino failed to report constructive dividends from Adak allegedly received by them in 1970, 1971 and 1972. [3]
*259 FINDINGS OF FACT Some of the facts have been stipulated. The stipulations and the exhibits attached thereto are incorporated herein by reference. Petitioner Adak is a corporation organized under the laws of the State of New York which maintained its principal office at Brooklyn, New York, at the time it filed its petition. Petitioners Stephen LoMangino (hereinafter "LoMangino") and Jean LoMangino, husband and wife, resided at Brooklyn, New York, at the time they filed their petition. Adak is engaged in the business of collecting garbage and refuse from commercial customers. LoMangino was the sole stockholder and president of Adak from its inception in January, 1960, through the time of trial. LoMangino's son, Joseph, was the secretary of Adak during 1970, 1971 and 1972. On its income tax returns for the fiscal years ending June 30, 1971, and June 30, 1972, Adak reported gross receipts of $220,399.47 and $240,075.79, respectively. It claimed "Dump Charges" of $17,225.00 in the fiscal year ending June 30, 1971 and "Dump Expense[s]" of $18,021.96 in the fiscal year ending June 30, 1972. During the fiscal years ending June 30, 1971, and June 30, 1972, Adak made *260 deposits to a checking account in its name at the Bankers Trust Company (account no. 40735431) of $235,371.77 and $261,120.23, respectively. Of these deposits, in the fiscal years ending June 30, 1971, and June 30, 1972, $60,958.55 and $67,103.90, respectively, represented exchange payroll checks and $1,835.00 and $8,655.00, respectively, represented cash deposits. During the fiscal year ending June 30, 1971, Adak received a check in the amount of $1,992.15 from its customer Pisa Catering for the pickup of garbage which check Adak deposited in a special checking account at Bankers Trust Company. During the fiscal year ending June 30, 1972, Adak received a check in the amount of $3,584.44 from its customer Sunset Strip Cabana, Inc. for the pickup of garbage which check Adak deposited in a savings account in the name of Joseph LoMangino at the Williamsburgh Savings Bank. During the fiscal years ending June 30, 1971, and June 30, 1972, Adak received cash from its customers that was recorded in its subsidiary books in the respective amounts of $112,597.57 and $123,270.53. LoMangino has a sixth grade education. During the years at issue, he made deposits on behalf of Adak in *261 a checking account at Bankers Trust Company. A certified public accountant prepared Adak's books and records with LoMangino's assistance. During the years 1970 through 1972, Adak owned 5 or 6 garbage trucks. The drivers of these trucks regularly collected bills from Adak customers and turned over the amounts collected to LoMangino or his son. The bulk of the bills collected by the drivers were paid in cash. On occasion, the drivers of Adak trucks would collect garbage from new customers they solicited, but for several months would not tell LoMangino of the existence of these new customers. During this period, the drivers would collect money from the customers and pocket it. Drivers also occasionally failed to report or turn over to LoMangino cash earned when a customer underwent major alterations and needed extra trash carting services. Drivers further received and failed to report a few extra dollars "coffee stop money" earned each day by picking up small loads of trash from businesses which were not recognized Adak customers. On a fairly regular basis, Adak drivers paid $5-10 cash "tips" to employees of the city dumps where they hauled their trash. The tips were for *262 such things as letting an Adak truck cut ahead of other trucks waiting in line to dump garbage, overlooking a defect in an Adak load, letting the driver wash out his truck with the dump's hose, letting the driver dump his load on hard ground (as opposed to on top of a soft pile of garbage), letting the driver into the dump even though the dump was said to be full and getting the dump tractor driver to tow a broken-down Adak truck off a pile of garbage and onto hard ground. The Adak drivers also paid cash Christmas gifts to the dump attendants. LoMangino was informed of and reimbursed the drivers for some of these tips and Christmas gifts given to the dump employees. In the years 1970, 1971 and 1972, LoMangino received interests payments on personal loans he made to Thomas Colasanto of $897.80, $1,189.87 and $843.76, respectively. He did not report these amounts as income on his personal returns each year. On February 13, 1978, LoMangino pleaded guilty to willfully and knowingly causing the preparation and filing of an income tax return for Adak for its fiscal year ending June 30, 1972, which he did not believe to be true and correct as to every material matter, in that *263 in the return Adak reported gross receipts of $240,075.79 whereas he knew and believed that Adak's gross receipts were substantially higher, in violation of section 7206(1). Adak timely filed its income tax returns for the fiscal years June 30, 1971, and June 30, 1972, on or before September 15, 1971, and September 15, 1972, respectively. On September 8, 1978, respondent mailed to Adak a statutory notice of deficiency covering the above fiscal years. Petitioners Stephen and Jean LoMangino timely filed their income tax returns for the taxable years 1970, 1971 and 1972 on or before April 15, 1971, April 15, 1972, and April 15, 1973, respectively. On August 2, 1979, respondent mailed to Stephen and Jean LoMangino a statutory notice of deficiency covering the above taxable years. On September 11, 1981, LoMangino pleaded guilty to unlawfully, willfully and knowingly corruptly endeavoring to influence, obstruct and impede the due administration of justice with respect to the instant Tax Court cases by offering to pay, causing to be paid and paying a sum of money to an agent and an official of the Office of Regional Counsel of the Internal Revenue Service, to take such action necessary *264 to cause the Tax Court to determine that there were no deficiencies due from LoMangino and Adak, in violation of 18 U.S.C. sec. 1503 (Supp. V 1981). OPINION In the instant cases, respondent determined that Adak fraudulently failed to report income of $65,381.04 and $67,094.75 in its fiscal years ending June 30, 1971, and June 30, 1972, respectively. Respondent further determined that this alleged unreported income of Adak constituted fraudulently unreported dividend income to LoMangino, Adak's president and only shareholder, in the amounts of $32,690.52, $66,237.89 and $33,547.38, in the taxable years 1970, 1971 and 1972, respectively. [4] Finally, respondent determined that LoMangino fraudulently failed to report interest income of $897.80, $1,197.87 and $843.76 in the taxable years 1970, 1971 and 1972, respectively, received on account of personal loans LoMangino made to Thomas Colasanto. *265 Neither of the deficiency notices in these cases was sent within the three-year period prescribed in section 6501(a). Accordingly, petitioners have pleaded the statute of limitations in both dockets. Respondent contends that all of the deficiencies may be assessed and collected under section 6501(c)(1) because each of the five returns at issue herein was false or fraudulent with the intent to evade tax. In addition, respondent argues that for Adak's fiscal year ending June 30, 1972, the six-year statute of limitations provided by section 6501(e)(1)(A) in the case of omissions of gross income exceeding 25 percent applies and has been satisfied. We begin with the statute of limitations question as it relates to petitioner Adak. In order for respondent to collect any deficiency for Adak's fiscal years ending June 30, 1971, and June 30, 1972 (absent a showing of a greater than 25 percent omission of gross income) respondent must show by clear and convincing evidence that Adak's returns for those years were fraudulent. Section 7454(a); Rule 142(b); *266 Foster v. Commissioner,487 F.2d 902 (6th Cir. 1973), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. by unpublished order 578 F.2d 1383 (8th Cir. 1978). To prove fraud, respondent must show that the taxpayer acted with specific intent to evade a tax believed to be owing. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). Fraud may not be presumed or imputed; however, since direct evidence of fraud is seldom available, respondent may meet his burden of proof through circumstantial evidence. Stone v. Commissioner,56 T.C. 213, 224 (1971). Respondent's determination of fraud for Adak's fiscal years ending June 30, 1971, and June 30, 1972, rests on the following factors: 1) his conclusion that Adak failed to report $65,381.04 and $67,094.75, respectively, of gross income in those years, 2) his conclusion that Adak's books and records were inadequate and incomplete, 3) his conclusion that Adak engaged in a scheme to conceal Adak's cash receipts, *267 4) LoMangino's guilty plea to the charge of causing the filing of a return for Adak's fiscal year ending June 30, 1972, containing material false statements in violation of section 7206(1) and 5) LoMangino's attempt to bride individuals in the Internal Revenue Service to settle the instant cases on a "no deficiency" basis. In determining the amount of income Adak allegedly failed to report, respondent employed the bank deposits and cash expenditures method of reconstructing income. This method was succinctly described in Morrison v. United States,270 F.2d 1, 2 (4th Cir. 1959), as follows: Basically, * * * this involves the estimation of the gross receipts of a business by ascertaining the bank deposits made during the tax year, together with any other income shown to have been received but not placed in [the] bank. To the total thus shown it is necessary to make numerous deductions and adjustments, such as, for example, eliminating amounts deposited as the proceeds of bank loans, amounts transferred from one bank account to another, any amounts received as gifts, and other adjustments of a similar sort, thereby determining the gross business receipts. From *268 the amount thus found there is deducted all proper business expenses in order to arrive at the adjusted gross income. See also United States v. Morse,491 F.2d 149 (1st Cir. 1974); United States v. Lacob,416 F.2d 756 (7th Cir. 1969); Reaves v. Commissioner,295 F.2d 336 (5th Cir. 1961), affg. 31 T.C. 690 (1958); C.B.C. Super Markets Inc. v. Commissioner,54 T.C. 882 (1970). Using this methodology, respondent determined that Adak had bank deposits not explainable as gifts, loans, transfers, or other non-income deposits as follows: FYE
6/30/71
6/30/72
Bankers Trust Account No. 40735431
$220,399.47
$240,075.79
Special Bankers Trust Account
1,992.15
Williamsburgh Savings Bank Account
3,584.44
$222,391.62
$243,660.23
Next, respondent examined petitioner's books. The parties stipulated that the books show that Adak received cash from its customers of $112,597.57 in the fiscal year ending June 30, 1971, and $123,270.53 in the fiscal year ending June 30, 1972. The parties further stipulated that cash deposits to the main Bankers Trust Company checking *269 account amounted to only $1,835 and $8,655 in the respective fiscal years. Accordingly, respondent determined that the difference between the cash deposited and the cash shown on the books should be added to petitioner's bank deposits as additional gross receipts. Respondent then determined that Adak failed to report additional cash receipts that it had failed to show on its books and records of $13,584.87 in its fiscal year ending June 30, 1971, and $15,998.68 in its fiscal year ending June 30, 1972. Finally respondent subtracted $60,958.55 in the fiscal year ending June 30, 1971, and $67,103.90 in the fiscal year ending June 30, 1972, to reflect Adak's own payroll checks deposited to its regular checking account. The following table illustrates this bank deposits and specific items calculation: FYE
6/30/71
6/30/72
Net Bank Deposits
$222,391.62 $243,660.23 Cash Received According to
Books but not Deposited
110,762.57 114,615.53 Cash Received but not
Recorded on Books or
Deposited
13,584.87 15,998.68 Less: Exchange Payroll Checks
(60,958.55)
(67,103.90)
Gross Receipts
$285,780.51 $307,170.54 Less: Gross Receipts Reported
(220,399.47)
(240,075.79)
Unreported Gross Receipts
$65,381.04 $67,094.75 *270 Respondent failed to introduce any admissible testimony or other evidence to substantiate his determination that Adak received cash from off-the-books customers of $13,584.87 in fiscal year ending June 30, 1971, and $15,998.68 in fiscal year ending June 30, 1972. The only support offered for this part of the determination was the hearsay testimony of respondent's Special Agent. To put it mildly, this testimony does not constitute clear and convincing evidence of a fraudulent underpayment. C.B.C. Super Markets, Inc. v. Commissioner,supra at 896. In addition, since respondent also failed to introduce Adak's books, even if we believed Adak received such cash, we have no way of knowing that such cash receipts were off-the-books or, more importantly, unreported. The remainder of respondent's bank deposits analysis, however, was supported by clear and convincing evidence. First, respondent's conclusion that the net bank deposits were gross receipts of Adak is no longer seriously disputed by petitioners. At trial petitioners elicited testimony from LoMangino that some of the deposits could have been loans, gifts or transfers, but no specifics were given. Under *271 the bank deposits method, respondent is under a duty to try to eliminate all non-income deposits from his calculation of gross receipts. Although the government may not disregard explanations of the taxpayer "reasonably susceptible of being checked [,it] * * * is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the [taxpayer]." Holland v. United States,348 U.S. 121, 138 (1954); United States v. Slutsky,487 F.2d 832, 840-842 (2d Cir. 1973); Harper v. Commissioner,54 T.C. 1121, 1129 (1970). The testimony of LoMangino was so general that it was not susceptible of concrete investigation. Perhaps because they recognized this fact petitioners on brief no longer contend that any of the net bank deposits were from nontaxable sources. Second, respondent's addition to net bank deposits of cash receipts recorded on Adak's books but not deposited to any of its bank accounts is also proper in arriving at gross receipts. *272 Morrison v. United States,supra. The stipulation that Adak's books showed the receipt of such cash constitutes in essence an admission by petitioners that Adak received these amounts. Accordingly, respondent has shown by clear and convincing affirmative proof that Adak underreported gross receipts of at least $51,796.17 [5] in fiscal year ending June 30, 1971, and $51,096.07 [6] in fiscal year ending June 30, 1972. Petitioners contend, however, that Adak incurred substantial unclaimed cash expenses in these fiscal years which would offset any increase in gross receipts. Petitioners' witnesses convincingly testified that during the years in issue Adak garbage truck drivers paid numerous small cash "gifts" to the employees of city dumps for preferential treatment. By petitioners' own rather generous estimates, however, these payments, along with larger Christmas gifts, amounted to only $37,600 per year. Even if we were to accept these figures, which we do not, this still leaves an underpayment of tax of at least $13,000 in *273 each of Adak's fiscal years at issue. Petitioners' argument that Adak must have had a great deal of other unreported cash expenditures which would entirely offset the unreported gross receipts was so vague and insubstantial, and devoid of any numbers, that it must be rejected. In addition, it is certainly not clear to us why, if Adak did incur such a wealth of additional expenses, it would not have claimed them as deductions. In sum, respondent has established by clear and convincing evidence substantial underpayments of tax in each of Adak's fiscal years at issue. Such a pattern of substantial under-statement is itself sufficient to establish fraud. Harper v. Commissioner,supra at 1139. However, there are other indicia of fraud. First, Adak quite obviously reported only the net deposits to its main Bankers Trust Company checking account as income on its tax returns. These amounts consisted essentially of all its gross receipts received in the form of checks. With only minor exceptions, Adak failed to report its cash gross receipts. It strains credulity to believe that the business could accidentally have failed to report virtually all of its cash *274 receipts. Second, there is evidence that at least two items constituting gross receipts were diverted from the main Bankers Trust Company account--one item in each taxable year. Being deposited in other accounts (one went directly into the account of LoMangino's son, Adak's secretary), they were, of course, unreported. We believe the above indicia establish fraud by clear and convincing evidence. We wish to note, however, that we do not rest our holding of fraud on either 1) the state of Adak's books and records (see Stone v. Commissioner,supra at 224) because respondent did not introduce these into evidence or 2) LoMangino's guilty plea to filing a return for Adak's second fiscal year at issue herein containing material false statements in violation of section 7206(1), because the corporation is not estopped by such a plea (see C.B.C. Super Markets, Inc. v. Commissioner,supra at 893-896); and because more compelling evidence of fraud exists, we need not rest our holding of fraud in part on LoMangino's guilty plea to the charge of attempting to bribe employees of the Internal Revenue Service to concede the instant cases. *275 Since Adak's returns for the fiscal years ending June 30, 1971, and June 30, 1972, were fraudulent, any deficiencies determined for those years may be assessed and collected. [7]Section 6501(c)(1). In addition, since respondent has shown an underpayment due to fraud in each year, the section 6653(b) additions are sustained. We now turn to the deficiencies determined against Adak. Petitioners bear the burden of disproving these deficiencies. Rule 142(a). Respondent determined that Adak failed to report gross receipts of $65,381.04 in fiscal year ending June 30, 1971, and $67,094.75 in fiscal year ending June 30, 1972. As we detailed above, respondent has shown convincingly that Adak failed to report at least $51,796.17 in fiscal year ending June 30, 1971, and $51,096.07 in fiscal year ending June 30, 1972. The question, therefore, is whether petitioners have established that Adak did not receive an additional $13,584.87 and $15,998.68, respectively, in these two fiscal years. The disputed amounts were *276 determined by respondent based on the investigations of several of his agents. These agents followed Adak's trucks to determine Adak's true customers. The agents then examined the books of these Adak customers to see if they had paid Adak money in the years at issue which Adak's books did not reflect. By this method, respondent determined that 45 customers made payments of cash to Adak in the years in issue which Adak did not report on its books or deposit into its checking accounts. In attempting to refute the determined amounts, petitioners did not call any of the customers listed in the deficiency notice to testify. Nor did petitioners present any evidence addressed to any specific item determined by respondent. Rather, petitioners offered the testimony of one of Adak's drivers that on occasion drivers would fail to report to LoMangino cash received from new customers and certain small customers who the drivers had solicited. We found the testimony of Adak's driver credible. Such testimony, however, is insufficient to meet petitioners' burden of proof. There is no evidence that the specific amounts determined by respondent to have been unreported were from new customers *277 or small customers solicited by the drivers. These amounts could just as easily have represented payments of regular Adak customers which Adak via LoMangino consciously failed to report or deposit into its accounts. The Adak driver was never asked whether he knew if any of the 45 customers were new customers or "coffee stop money" customers. On this record, petitioners have simply failed to disprove any of the unreported gross receipts determined by respondent. The next issue is whether Adak incurred additional unclaimed cash expenses in the form of gratuities and Christmas gifts given to city dump operators for preferential treatment. Petitioners presented the testimony of one of Adak's drivers and the testimony of one of Adak's competitors that such gratuities were common practice of private garbage disposal companies operating in Brooklyn during the years in issue. Payments of these gratuities sped up Adak's garbage collecting process and enabled it to service more customers. Such testimony was uncontradicted and credible. These expenses were ordinary and necessary within the meaning of section 162(a). We decline respondent's invitation to disallow these expenses under section *278 162(c)[8] as illegal bribes or kickbacks because respondent has cited no provision of law which these payments violated (as was his burden to do if he would invoke that subsection). Petitioners have estimated these unclaimed dump expenses to amount to $37,600 in each fiscal year. However, they provided insufficient substantiation of the actual amounts paid. Bearing heavily against Adak, whose inexactitude is of its own making, we hold Adak is entitled to deductions of $10,000 for unclaimed dump expenses in each fiscal year. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). *279 Petitioners also claim Adak had additional unreported cash expenses for such items as fixing its trucks and repairing garbage containers. The record, however, is devoid of any quantitative estimate of these expenses. Under such circumstances, to find that Adak incurred further unclaimed deductions under the theory of Cohan would constitute an act of "unguided largesse." Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957). We decline to bestow any such lagniappe upon Adak. We turn next to the individual petitioners herein. To collect the deficiencies from the LoManginos in the taxable years 1970, 1971 and 1972, respondent must first establish that each of the returns filed for those years was fraudulent. Section 6501(c)(1). The parties stipulated that the LoManginos failed to report interest income of $897.80, $1,189.87 and $843.76 in the taxable years 1970, 1971 and 1972, respectively, received on account of personal loans LoMangino made to one Thomas Colasanto. Respondent determined that the LoManginos also failed to report constructive dividends in each of the three taxable years in the total amount of the gross receipts Adak failed to report *280 in its fiscl years ending June 30, 1971 and June 30, 1972. We have detailed above how respondent has convincingly established that Adak failed to report the great majority of its cash gross receipts. The testimony of one of Adak's drivers convinces us that LoMangino personally received most of the cash receipts that Adak's drivers turned in. While LoMangino may have spent some of this money for Adak's benefit (e.g., to reimburse drivers for the dump attendant gratuities), we are satisfied that substantial amounts were not spent for any corporate purpose. Consequently, LoMangino received substantial unreported income diverted from Adak in each of the taxable years 1970, 1971 and 1972. We also hold that the LoManginos' underpayments of tax in each of these three years were due to fraud. Respondent has shown a pattern of substantial understatement both of interest and dividend income in each taxable year. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980); *281 Harper v. Commissioner,supra at 1139. In addition, we think it is a legitimate inference that a man who would willfully subscribe to a materially false income tax return for another--i.e., Adak in its fiscal year ending June 30, 1972--would willfully subscribe to a materially false return for himself, particularly where, as here, he was the recipient of a major part of the very income diverted from Adak, and by his acts unreported on its returns. Accordingly, the statute of limitations is not a bar to the collection of any deficiencies. Further, the additions to tax under 6653(b) were properly imposed. Petitioners have presented no testimony or other evidence that LoMangino did not receive, actually or constructively, all the unreported income of Adak in its fiscal years ending June 30, 1971, and June 30, 1972. Petitioners merely attempted to show that Adak did not underreport any income in those fiscal years. Accordingly, respondent is sustained on the deficiencies determined against the LoManginos for each of the three years in question, except that, to reflect Adak's unclaimed dump expenses, LoManginos' dividends from Adak will be reduced $5,000, $10,000 *282 and $5,000, for the taxable years 1970, 1971 and 1972, respectively. See footnote 4, supra.
To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the years in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent determined the additions to tax under section 6653(b) in docket No. 14605-79 against petitioner Stephen LoMangino only.↩
3. In the petition in docket No. 14605-79, petitioners Stephen LoMangino and Jean LoMangino alleged that Jean LoMangino was an innocent spouse not liable for any deficiencies in 1970, 1971, and 1972. See section 6013(e). This argument has apparently been abandoned, since petitioners introduced no evidence on this question at trial and made no mention of this issue in their briefs. In any event, even if not abandoned, petitioners' failure to adduce any evidence on this issue requires us to hold that petitioners have not satisfied their burden of proof of showing that Jean LoMangino was an innocent spouse in the years before us. Rule 142(a); Sonnenborn v. Commissioner,57 T.C. 373, 381↩ (1971).
4. In determining the amount of income LoMangino failed to report from Adak, respondent assumed that LoMangino received one-half of Adak's June 30, 1971, fiscal year unreported income in 1970 and the other half in 1971. Respondent made the same sort of allocation for Adak's fiscal year ending June 30, 1972.↩
5. $65,381.04 - $13,584.87 = $51,796.17 ↩
6. $67,094.75 - $15,998.68 = $51,096.07↩
7. Holding as we do, we need not address the argument that the statute of limitations for Adak's fiscal year ending June 30, 1972, is open under section 6501(e)(1)(A)↩.
8. Section 162(c) provides, in relevant part: (c) ILLEGAL BRIBES, KICKBACKS, AND OTHER PAYMENTS.-- (1) ILLEGAL PAYMENTS TO GOVERNMENT OFFICIALS OR EMPLOYEES.-- No deduction shall be allowed under subsection (a) for any payment made, directly or indirectly, to an official or employee of any government, or of any agency or instrumentality of any government, if the payment constitutes an illegal bribe or kickback * * *. The burden of proof in respect of the issue for the purposes of this paragraph, as to whether a payment constitutes an illegal bribe or kickback * * * shall be upon the Secretary or his delegate to the same extent as he bears the burden of proof under section 7454↩ (concerning the burden of proof when the issue relates to fraud).