GARY A. VAN SKYHOCK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Skyhock v. Commissioner
Docket No. 26489-81.
United States Tax Court
T.C. Memo 1983-466; 1983 Tax Ct. Memo LEXIS 323; 46 T.C.M. (CCH) 990; T.C.M. (RIA) 83466; August 10, 1983. Charles E. Turnbull, for the petitioner. F. Michael Kovach, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency in petitioner's 1978 income taxes of $52,757 and additions to tax, pursuant to section 6653(b) [1] and section 6654, in the amounts of $26,378 and $1,576, respectively. Petitioner no longer contests that he had unreported income for 1978, and the parties have agreed that the correct amount *324 of tax owing is $27,028. Because petitioner did not contest the addition to tax for failure to pay estimated tax under section 6654, the sole issue for our determination is whether petitioner's underpayment of taxes for 1978 was due to fraud. FINDINGS OF FACT The case was stipulated in part, and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Gary A. Van Skyhock resided in Interlochen, Michigan, when the petition in this case was filed. Petitioner has been engaged in the active practice of chiropractic medicine in Traverse City, Michigan, since he graduated magna cum laude from Palmer College of Chiropractic in 1974. While attending school, petitioner was a member of the honors fraternity and president of his class. He has been a member of the Traverse City Chamber of Commerce, the International Chiropractic Association, the Michigan-Chiropractic Counsel, and is a diplomate on the National Board of Chiropractic. When he first started his practice, petitioner employed a certified public accountant (CPA) who instructed petitioner that, for tax purposes, it was necessary to maintain a check register with detailed *325 entries. Petitioner did not like keeping such records himself and retained the CPA to keep the records for him. After a dispute regarding fees, petitioner fired the CPA and dropped the bookkeeping system. Petitioner thereafter consulted accountants for general tax advice, but any recordkeeping was performed by him. He prepared his own quarterly payroll tax reports for 1978. Petitioner's chiropractic business prospered from its inception in 1974, and his reported gross receipts, adjusted gross income, and tax liability grew accordingly, as the table below illustrates: Adjusted
Tax
Year
Gross Receipts
Gross Income
Liability
1975
$36,668
$11,775
$1,164
1976
56,583
20,379
3,245
1977
94,834
42,959
6,378
1978
[2] 136,606
27,028
*326 Petitioner lived in the a comfortable manner afforded by such prosperity and, by 1978, owned a house, a boat, a car, and two motorcycles. Petitioner first heard of the Life Science Church in December 1978 from another chiropractor, Ed Rassel, who had formed his own "church," and advised petitioner to form one, also. Dr. Rassel spent an hour instructing petitioner on the tenets of the church and told him that the "side benefit" of forming a church was "that you won't have to pay any taxes." William Drexler, who with Peter Beaumont marketed the Life Science Church program, spoke with petitioner serveral times. Mr. Drexler represented to petitioner that petitioner would realize significant tax savings by forming a church. Before petitioner took steps to form his "church" he discussed his plans with the preparer of his 1977 return, who advised him that such action would not be proper. Petitioner disregarded this admonition, however, and sometime between January 4, 1979, and January 11, 1979, he caused a check for $1,500, payable to the "Lansing Life Science Comm. Church," to be prepared by his wife and drawn on their joint account. The check was backdated to December 14, 1978. *327 After paying $1,500 to the church, petitioner received a packet of materials, including a "vow of poverty" form. Petitioner executed this form, which purported to transfer all of petitioner's property and income to the church, and backdated it to December 15, 1978. Although the vow of poverty form characterized the transfer as irrevocable, the form provided that the property and income would revert to petitioner were the government to "'void' this act against * * * [petitioner's] express will and intent * * * by blocking the rightful tax exempt status and maintenance of the Church * * *." Notwithstanding his "vow of poverty," petitioner continued to maintain the standard of living acquired prior to the formation of the church. He took no steps to change the name in which title to his property, except his residence, was held. He continued to use the income from his chiropractic practice to pay his mortgage, vehicle and boat loans, and personal expenses. Although he established a bank account in the name of the Family Chiropractics Center - A Division of Grand Traverse Life Science Church, only $1,700 was deposited in this account in 1978 and it was closed by September 1979. *328 Warrants issued by the Michigan Department of Social Services for chiropractic services rendered by petitioner continued to be made payable to petitioner, individually, and not to his church. Petitioner never took any steps to notify the community of his ministry and did not hold church meetings for the public. Although he discussed the tax advantages of his church with a chiropractor who practiced with him, petitioner never discussed the religious aspects of his "ministry" with his co-worker. On or about April 15, 1979, petitioner filed his 1978 Federal personal income tax return, providing only his name, address, social security number, a claim for refund in the amount of $4,801, and a notation claiming that "I have taken the vow of poverty * * * and am therefore, exempt from Federal Income Tax and F.I.C.A. Tax." At that time he did not intend ever to file returns for subsequent years. Petitioner was notified on August 3, 1979, that his return had been selected for examination. The agent in charge of the investigation asked petitioner several times to meet with him at the Internal Revenue Service office and to bring all of his books and records. Petitioner would not meet *329 with the agent until a summons was served upon him. He then came to the Internal Revenue Service office with his wife and two other people, whom petitioner refused to identify. Petitioner refused to meet with the agent in a private office, and when the agent refused to discuss the aduit in the public rooms, petitioner left without providing the information requested by the agent. Respondent subsequently issued a statutory notice of deficiency utilizing the bank deposits method of calculating income. OPINION Respondent claims that petitioner's underpayment of tax for 1978 was due to fraud; petitioner has conceded the fact of underpayment, but denies that such underpayment was due to fraud. In support of that denial, petitioner argues that he incurred deductible expenses during 1978 that could not be substantiated because petitioner's belief in his tax-exempt status caused him to fail to keep records. This argument is untenable. Petitioner admitted at trial that his inability to substantiate his 1978 expenses was due to his dislike of recordkeeping, and testified that he did not learn of the Life Science Church prior to December 1978. The 50-percent addition to tax in the *330 case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year due to fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). *331 Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). The evidence produced by respondent clearly and convincingly proves petitioner's fraudulent intent in filing his 1978 return. Petitioner was aware that individuals have, in general, a liability to pay tax, as demonstrated by his payments for earlier years. As we stated in an earlier decision on facts nearly identical to these, "It is hard to believe any individual, * * * [especially] one as well educated as petitioner, could honestly believe that he could escape liability for income taxation and still enjoy unfettered use of all the income he received by so simple a step as the creation of the 'church'." Stephenson v. Commissioner,79 T.C. 995, 1006 (1982), on appeal (6th Cir., June 7, 1983). Petitioner enjoyed the fruits of his practice earned subsequent to his "vow of poverty" as he enjoyed them before his "vow. *332 " Backdating his check in payment of his "ordination" was an affirmative act evincing petitioner's fraudulent intent, i.e., the intent to mislead. In fact, although at trial petitioner claimed to have written the check in the latter part of December, his canceled checks and bank statements indicate that the check was not written until January 1979, thus casting further doubt on the veracity of his statements. He also backdated the vow of poverty. "This purposeful backdating of the check not only undermines petitioner's credibility, but more importantly, shows that in setting up the 'church' and becoming a minister, he was motivated by the prospect of tax savings, not by religious conviction." Stephenson v. Commissioner,supra at 1007. This conclusion is reinforced by petitioner's maintenance of the same life-style he enjoyed prior to his purported vow of poverty, his failure to publicize his church or to hold church meetings, and his conversations with his co-worker, wherein he emphasized the tax benefits of his church without ever discussing its religious aspects. Petitioner's testimony that he deliberately disregarded the advice of his 1977 return preparer *333 reinforces the conclusion that he harbored the fraudulent intent necessary to justify the additions to tax under section 6653(b).Finally, his refusal to cooperate in the attempt to determine his correct liability during audit, in the context of this record, is a further indication of fraud. Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Grosshandler v. Commissioner,75 T.C. 1, 20 (1980); Gajewski v. Commissioner,supra at 200. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. This amount was determined by respondent in his notice of deficiency. The stipulated tax deficiency is significantly less than the amount originally determined, but the record does not indicate whether the reduction is the result of a recalculation of gross receipts, additional adjustments to gross income, or additional deductions.Petitioner paid his reported tax liabilities for 1975, 1976, and 1977.↩