GEORGE COLOPY AND ELSIE COLOPY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Colopy v. Commissioner
Docket No. 6279-80.
United States Tax Court
T.C. Memo 1984-71; 1984 Tax Ct. Memo LEXIS 604; 47 T.C.M. (CCH) 1087; T.C.M. (RIA) 84071; February 13, 1984. A. J. Schmitt III, for the petitioners. Linda K. West, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' joint Federal income tax and asserted additions to tax against petitioner George Colopy under section 6653(b) [1] as follows: addition to Tax
Sec. 6653(b),
Year
Deficiency
I.R.C. 1954
1970
$ 291.60
$ 882.40
1971
$34,475.17
$18,007.74
1972
$31,885.21
$16,833.51
1973
$20,104.11
$10,848.02
The issues for decision are: 1. Whether respondent correctly reconstructed the taxable income from petitioner George Colopy's sheetrock hanging and finishing business during the years before the Court; and 2. Whether any part of any underpayment for the years in question was due to fraud on the part of petitioner George Colopy within the meaning of section 6653(b). FINDINGS OF FACT Petitioners filed delinquent joint Federal income tax returns for each of the years in *606 question with the Internal Revenue Service Center, Austin, Texas. At the time their petition in this case was filed, they resided in Metairie, Louisiana. During each of the years in issue, petitioner George Colopy (petitioner) was self-employed as a subcontrator in the sheetrock hanging and finishing business. His principal place of business was Metairie, Louisiana. The time which petitioner spent on his business was devoted almost entirely to bidding on jobs, hiring crews to perform work on the jobs that he received, and inspecting the work done to make sure that it was satisfactory. Except for some touch-up work on practically completed jobs, he did not perform the actual labor himself. The work was performed by crews, usually composed of six to ten men. Petitioner had no permanent employees but instead hired two new crews for each job; one to hang the sheetrock and the other to do the finishing. Petitioner bid on jobs by the square foot of sheetrock to be hung. During the years in question, most of petitioner's bids were about 7 to 8 cents a square foot. Petitioner would then pay 2 to 2-1/2 cents per square foot to the crew that hung the sheetrock and another 2 to *607 2-1/2 cents per square foot to the crew that did the finishing. The sheetrock was furnished by the contractors, but on most jobs petitioner was required to furnish all other materials, including nails, brushes, rollers, joint compound ("mud"), tape, and corner beads. During the years in issue, petitioner kept no records of his business receipts and expenses. He maintained no checking or savings account. He paid substantially all of his business and personal expenses in cash. Petitioners failed to file timely Federal income tax returns for the years 1966 through 1973. Petitioner testified that he did not file for the years 1966 through 1969 because he was working "very little" at that time. Petitioner was aware that he was required to file for the years here in question, 1970 through 1973, but explained that he did not do so because "I failed to file and I got scared. I didn't know what to do really." On December 21, 1976, an information was returned in the United States District Court for the Eastern District of Louisiana charging petitioner with four counts of willfully and knowingly failing to file income tax returns, in violation of section 7203. The four counts concerned *608 the years 1970 through 1973, respectively. Petitioner pled guilty to counts 2 and 3, concerning the years 1971 and 1972. [2] On June 8, 1977, he was fined $2,500 and sentenced to prison for one year for each count. The prison sentences were suspended. Respondent reconstructed petitioner's gross income for the years in question by the specific items method. He consulted the records of the contractors for whom petitioner worked, and determined that petitioner had received the following amounts of gross income: 1970
$ 90,851.83
1971
$187,183.57
1972
$202,149.83
1973
$159,857.29
Petitioner has stipulated to the correctness of these amounts. Respondent condeces that this income was partially offset by the following deductions: 1970
1971
1972
1973
Rent
$ 600.00
$ 600.00
$ 600.00
$ 600.00
Telephone
95.92
107.14
113.08
123.82
Truck
1,361.00
1,496.00
1,454.00
1,738.00
Legal fees
200.00
500.00
Office
supplies
120.00
120.00
120.00
120.00
Depreciation
724.33
724.33
1,866.22
622.08
Interest
157.06
$157.05
Taxes &
licenses
131.50
Insurance
123.11
123.10
Labor
58,320.00
60,700.00
73,102.00
62,115.00
Materials
18,470.82
34,956.82
38,986.88
30,777.97
Total
$79,692.07
$98,704.29
$116,853.85
$96,877.02
*609 Respondent also developed these expense figures by means of the specific items method. Respondent interviewed as many of petitioner's suppliers and crew members as could be found and allowed deductions based on their records and recollections of what petitioner had paid them. Subtracting the conceded expenses from the stipulated gross receipts yields the following net profits and profit margins (net profits as a percentage of gross receipts): 1970
1971
1972
1973
Gross
receipts
$90,851.83
$187,183.57
$202,149.83
$159,857.29
Expenses
79,692.07
98,704.29
116,853.85
96,877.02
Net
profit
$11,159.76
$88,479.28
$85,295.98
$62,980.27
Profit
margin
12 percent
47 percent
42 percent
39 percent
Petitioner filed delinquent returns for the years in question, 1970 through 1973, in March 1977, after the commencement of the criminal action described above. The returns were prepared by Terry Meyer, a professional accountant. Meyer did not sign the returns as preparer, however. As he testified, "it was just based on information that I wasn't sure whether was right." The results of petitioner's sheetrock business were reported in the *610 returns simply by the entry of the following net profit figures, with no breakdown into gross receipts and expenses: 1970
$ 9,612.52
1971
$10,505.52
1972
$12,131.92
1973
$10,121.87
Meyer also prepared petitioner's returns for the years 1974 through 1980, signing these returns as preparer. In these returns, the results of petitioner's business were reported in detail on Schedules C. Reported gross receipts for these years averaged $448,522, ranging from a low of $188,390 in 1974 to a high of $639,006 in 1978. The reported expenses for materials, labor, and other items, and the net profit, varied little when measured as percentages of gross receipts. Materials expense averaged 12 percent of gross receipts, with a low of 11 percent and a high of 16 percent. Labor expense averaged 78 percent of gross receipts, varying from a low of 76 percent to a high of 79 percent. Other expenses ranged from 2 percent to 5 percent of gross receipts, averaging about 4 percent. Net profit averaged 6 percent of gross receipts, varying from a low of 5 percent to a high of 8 percent. So far as the record informs us, respondent has not challenged the accuracy of petitioner's *611 returns for the years 1974 through 1980. Petitioner is of the opinion that the profit margin of his business was about the same in those years as it was during the years in question. OPINION 1. Deficiency
A taxpayer is required to maintain such records as will enable him to file a correct return. Sec. 1.446-1(a)(4), Income Tax Regs.; sec. 1.6001-1(a), Income Tax Regs. In the absence of such records, taxable income may be reconstructed by the Commissioner using any method which, in his opinion, clearly reflects income. Sec. 1.446-1(b)(1), Income Tax Regs.; Schellenbarg v. Commissioner,31 T.C. 1269 (1959), affd. in part and revd. in part on another issue 283 F.2d 871 (6th Cir. 1960). In the present case, respondent has chosen to use the specific items method of income reconstruction, based on the records and memories of third parties with whom petitioner dealt. This method has been approved by this Court. [3] Petitioner argues that respondent should have reconstructed his income by multiplying the stipulated gross receipts for the years in question by profit margins approximating those shown in his returns for subsequent years. This method, *612 too, has been approved by this Court. Tunningley v. Commissioner,22 T.C. 1108, 1117 (1954). It is clear that, when the inadequacy of a taxpayer's records forces respondent to reconstruct his incom by some indirect method, the choice of that method rests with respondent. Schellenbarg v. Commissioner,supra, at 1277. We are convinced, however, that petitioner's profit margins during the years in question were nearer to the 5 to 8 percent range that he achieved during the subsequent years 1974 through 1980 than to the large margins resulting from respondent's computations, particularly the 47 percent, 42 percent, and 39 percent margins resulting from respondent's determinations for the years 1971 through 1973. The discrepancy, we conclude, is largely due to respondent's failure to take into account all of the expenses, most significantly those of labor and materials, which petitioner actually incurred. [4]
*613 In stating this conclusion, we do not inply that respondent was required to reconstruct petitioner's income by the method petitioner advocates. We merely recognize that all methods of reconstruction are imprecise [5] and find, based on the documented results of subsequent years and the record as a whole, that respondent, while properly exercising his discretion in selecting the method of reconstruction, has overstated petitioner's net income from his sheetrock business for the years in question. Using our best judgment on the basis of the record before us, we find that petitioner realized net income from his sheetrock business in the following amounts: 1970
$10,000
1971
$22,500
1972
$25,000
1973
$20,000
Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). 2. Addition to Tax
Section 6653(b) provides that, if any part of any underpayment is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. *614 Fraud, within the meaning of section 6653(b), is an intentional wrongdoing with the specific intent of evading a tax believed to be owed. Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941). Whether fraud exists with respect to an underpayment of tax is a question of fact, and the burden is on respondent to show the existence of such fraud by clear and convincing evidence. Sec. 7454(a); Stone v. Commissioner,56 T.C. 213, 220 (1971); Rule 142(b). The answer to this question must be determined by an examination of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). The required intent may be shown by circumstantial evidence and reasonable inferences drawn from the facts. Stone v. Commissioner,supra at 224; Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. per order (8th Cir. May 2, 1978). We hold that respondent has carried his burden of proving that part of the underpayment for each of the years in issue was due to fraud on the part of petitioner George Colopy. Due to his criminal *615 convictions under section 7203, petitioner is collaterally estopped to deny that he willfully failed to file for 1971 and 1972, Gemma v. Commissioner,46 T.C. 821, 834 (1966), i.e., that he voluntarily and intentionally violated a known legal duty. United States v. Pomponio,429 U.S. 10 (1976). The willfulness of his failure to file for 1970 and 1973, the remaining years in issue, is established by his own testimony that he knew he was required to file but was scared to do so because of his previous pattern of nonfiling. This willful failure to file is not, by itself, sufficient to establish that petitioner acted with fraudulent intent, but it may be taken into account as persuasive evidence of fraud, particularly where such failure has persisted over a period of years. Stoltzfus v. United States,398 F.2d 1002, 1005 (3d Cir. 1968); Powell v. Granquist,supra at 60-61. [6] As this Court stated in Grosshandler v. Commissioner,75 T.C. 1, 19 (1980): An extended pattern of nonfiling plus some "convincing affirmative indication" of the requisite specific intent to defraud warrants imposition of *616 the addition to tax for fraud. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). The years in question were the fifth, sixth, seventh, and eighth years in succession that petitioner filed to file a timely Federal income tax return. While petitioner testified that he did not file for the years 1966 through 1969 because he worked "very little" at that time, he does not argue that his earnings for those earlier years were so low that no return was required under section 6012(a). Indeed, the fact that petitioner was scared by his failure to file for those years leads to the inference that he believed that some tax was owed with respect to them. Also, his continuing failure to file returns in those circumstances supports the conclusion that he hoped thereby to conceal his liability and ultimately to evade and defeat its collection. An additional indication of fraud is petitioner's failure to maintain any records. Grosshandler v. Commissioner,supra at 20; Otsuki v. Commissioner,53 T.C. 96, 109 (1969). The inference of fraud *617 arising from these facts is not rebutted by petitioner's unconvincing testimony that he did not intend to keep the money that he owed to the Government. There is no evidence that he was setting aside funds with which to pay his annually increasing tax liability. Considering petitioner's 8-year pattern of nonfiling together with his failure to maintain any records from which his taxable income could be computed, we conclude that part of the underpayment for each of the years in question was due to an attempt fraudulently to evade the income tax. Accordingly, we sustain respondent's imposition of additions to tax under section 6653(b). Petitioner argues that the fines totaling $5,000 that he paid as a result of his convictions under section 7203 should be credited against the addition to tax here imposed under section 6653(b). We do not agree.While the Internal Revenue Code provides that certain sanctions shall be mutually exclusive, [7] no such relationship exists between fines under section 7203 and additions to tax under section 6653(b). Under the statutory scheme, therefore, it is clearly contemplated that both sanctions may be imposed in the same case. The addition to tax *618 under section 6653(b) is not a criminal penalty, but instead is a civil measure which is "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." Helvering v. Mitchell,303 U.S. 391, 401 (1938). Its imposition in conjunction with a criminal penalty does not violate the double jeopardy clause of the Fifth Amendment. Helvering v. Mitchell,supra at 398-399. Accordingly, the addition to tax for fraud is not abated by the fines paid in connection with petitioner's criminal convictions. Petitioner argues in the alternative that the criminal fines should be credited against his income tax deficiency.This argument is without merit. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. The record does not reveal the disposition of counts 1 and 4 concerning 1970 and 1973.↩
3. See, for example, Ballard v. Commissioner,T.C. Memo. 1982-466, on appeal (8th Cir. May 31, 1983); Bolton v. Commissioner,T.C. Memo. 1975-373↩.
4. For example, according to respondent's determinations, in 1970 petitioner incurred labor costs of $58,320 in generating gross income of $90,851.83. In 1971, respondent determined that petitioner incurred labor costs of $60,700 in generating gross receipts of $187,183.57. In other words respondent maintains that petitioner's labor costs increased only slightly while his gross income more than doubled. Respondent's determinations for 1972 and 1973 are also based on labor costs much lower in relation to gross receipts than those incurred in 1970. Respondent's determinations regarding petitioner's labor expenses, particularly those of the years 1971-1973, are sharply at variance with our finding that it cost petitioner 4-5 cents of labor expense to earn 7-8 cents of gross income. We conclude that respondent understated petitioner's labor costs. It is relevant, we think, that the gross receipts figures developed by respondent from interviews with contractors reflect expenses deductible by them. Petitioners' deductions for labor and materials, on the other hand, reflect income items in the hands of the workers and suppliers. This is a problem inherent in the method chosen to reconstruct petitioners' income.↩
5. This, of course, includes our own reconstructions of income and expenses under the rule of Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930), to which we have frequently resorted.
6. See also Estate of Ming v. Commissioner,T.C. Memo. 1976-115↩.
7. For example, the additions to tax for negligence and fraud under sec. 6653(a) and (b), respectively, may not be simultaneously imposed. Sec. 6653(b)(3).↩