JOHN W. AND CHERYL W. ROBERTS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Roberts v. Commissioner
Docket Nos. 24257-90, 24258-90, 24259-90
United States Tax Court
T.C. Memo 1993-98; 1993 Tax Ct. Memo LEXIS 99; 65 T.C.M. (CCH) 2121; T.C.M. (RIA) 93098; March 23, 1993, Filed *99 For petitioner: Michael D. Bolen. For respondent: Lourdes M. DeSantis. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: John W. Roberts and Cheryl W. Roberts - Docket No. 24257-90 Year
Additions to Tax
Ended
Deficiency
Sec. 6653(b)
Sec. 6653(b(1)
Sec. 6653(b)(2)
Sec.6661
12/31/79
$ 9,049
$ 4,525
$ -- $ --   $ -- 12/31/80
7,293
3,647
-- --   -- 12/31/81
54,403
27,202
-- --   -- 12/31/82
33,811
-- 16,906
applies
8,453
12/31/83
159,733
-- 79,867
applies
39,933
12/31/84
118,752
-- 59,376
applies
29,688
The additions to the tax for fraud are applicable to petitioner John W. Roberts only. Alcovy Wood Products, Inc. - Docket No. 24258-90 Year
Additions to Tax
Ended
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
09/30/82
$ --  $ 1,574
applies
--  09/30/83
16,391
8,196
applies
$ 4,098
09/30/84
6,029
3,015
applies
--  Alcovy Properties, Inc. - Docket No. 24259-90 Year
Additions to Tax
Ended
Deficiency
Sec. 6653(b)
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
12/31/81
$ 518
$ 259
-- --   -- 12/31/82
15,098
-- $ 7,549
applies
$ 3,775
12/31/83
11,547
-- 5,774
applies
2,887
12/31/84
162,768
-- 81,384
applies
40,692
*100 On October 23, 1991, respondent filed a Motion for Partial Summary Judgment requesting summary adjudication on three issues: (1) whether petitioner John W. Roberts is collaterally estopped from denying that a part of the underpayment of tax due for the taxable year 1984 is due to fraud within the meaning of section 6653(b)(1) and (2) by virtue of his prior guilty plea to tax evasion under section 7201; (2) whether petitioner John W. Roberts is collaterally estopped from denying that he caused petitioner Alcovy Wood Products, Inc., to overstate its cost of goods sold for the fiscal year ended September 30, 1983; and (3) whether petitioners John W. Roberts, Alcovy Wood Products, Inc., and Alcovy Properties, Inc., are collaterally estopped from arguing that respondent obtained certain evidence in the course of a criminal investigation in violation of petitioners' Fourth and Fifth Amendment rights, or in violation of sections 7602 and 7609. On October 28, 1991, petitioners John W. Roberts and Cheryl W. Roberts filed a Motion to Suppress or Quash Notice of Deficiency alleging that respondent improperly and in bad faith obtained certain records of John W. Roberts and businesses that he *101 owned or controlled. After hearing oral argument by the parties, on October 28, 1991, the Court for reasons set forth in the trial transcript granted respondent's Motion for Partial Summary Judgment and denied petitioners' Motion to Suppress or Quash Notice of Deficiency. On June 1, 1992, respondent filed a Motion to Strike Portions of Reply Brief for Petitioners pursuant to Rule 52. Respondent requests the Court to strike from petitioners' reply brief filed on May 7, 1992, those portions alleging that petitioner Cheryl W. Roberts is an innocent spouse within the meaning of section 6013(e) and alleging that respondent's statutory notices of deficiency are barred by the statute of limitations in section 6501(a). Petitioners filed an opposition to respondent's motion on October 26, 1992. The remaining issues for decision are: (1) Whether petitioners John W. Roberts and Cheryl W. Roberts had unreported income in taxable years 1981, 1982, 1983, and 1984, and filed improper requests for refunds for taxable years 1979, 1980, and 1981. We hold that they did. (2) Whether petitioners John W. Roberts' and Cheryl W. Roberts' underpayments of taxes for taxable years 1979 through 1983 *102 were attributable to John W. Roberts' fraud with the intent to evade tax. We hold that the underpayments were attributable to John W. Roberts' fraud, and that John W. Roberts is liable for additions to tax for fraud under section 6653(b) for 1979, 1980, and 1981, and section 6653(b)(1) and (2) for 1982, 1983, and 1984. (3) Whether petitioners John W. Roberts and Cheryl W. Roberts are liable for additions to tax under section 6661 for taxable years 1982, 1983, and 1984. We hold that they are. (4) Whether petitioner Alcovy Wood Products, Inc., overstated its cost of goods sold and filed false and fraudulent income tax returns with the intent to evade taxes for its taxable years ended September 30, 1982, 1983 and 1984. We hold that it did and that it is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1982, 1983, and 1984. (5) Whether petitioner Alcovy Wood Products, Inc. is liable for an addition to tax under section 6661 for the taxable year ended September 30, 1983. We hold that it is. (6) Whether petitioner Alcovy Properties, Inc., had unreported income in taxable years 1981, 1982, 1983, and 1984, and filed false and fraudulent tax returns for those *103 years with the intent to evade tax. We hold that it did and that it is liable for additions to tax for fraud under section 6653(b) for 1981 and under section 6653(b)(1) and (2) for 1982, 1983, and 1984. (7) Whether petitioner Alcovy Properties, Inc. is liable for additions to tax under section 6661 for taxable years 1982, 1983, and 1984. We hold that it is. (8) Whether petitioner may raise two new issues in its reply brief (alleging that petitioner Cheryl W. Roberts is an innocent spouse within the meaning of section 6013(e), and alleging that respondent's statutory notices of deficiency are barred by the statute of limitations in section 6501(a)). We hold that petitioners' failure to raise timely in accordance with this Court's Rules the affirmative defenses of innocent spouse and statute of limitations prevents these issues from being raised after trial in petitioners' reply brief. All section references are to the Internal Revenue Code in effect for the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and exhibits attached thereto, first supplemental stipulation *104 of facts and exhibits attached thereto, and second supplemental stipulation of facts and exhibits attached thereto. Petitioners John W. Roberts and Cheryl W. Roberts resided in Covington, Georgia, at the time of the filing of their petition. Petitioner Alcovy Wood Products, Inc., and petitioner Alcovy Properties, Inc., had their principal places of business at Covington, Georgia, at the time of the filing of their petitions. Hereafter, we shall refer to petitioner John W. Roberts and Roberts and petitioner Cheryl W. Roberts as Mrs. Roberts (or the Roberts, collectively), petitioner Alcovy Wood Products, Inc., as Alcovy Wood, and petitioner Alcovy Properties, Inc., as Alcovy Properties. Upon graduation from the University of Georgia with a degree in forestry, Roberts held several jobs in the forestry industry in Georgia. He worked as a forestry consultant for Kendricks and Associates in Forsyth, Georgia, and as a forester at International Paper in Eatonton, Georgia, and Georgia Timberland in Macon, Georgia. Roberts was a knowledgeable forester; while in the employ of the above-referenced companies, Roberts was responsible for cruising timberlands and marking timber, buying timber, *105 and negotiating the sales price for tracts of timber. While working for Georgia Timberland, Roberts met Walter and Glen Rocker (the Rockers), two brothers who owned Little River Timber Company. In October 1978, Roberts and the Rockers formed Alcovy Wood for the purpose of brokering timber. Roberts held 50 percent of the stock and was president of the corporation, and the Rockers each held 25 percent of the stock of the corporation. Alcovy Wood entered into contracts with timberland owners, arranged long-term timber cutting and hauling agreements, and arranged timber sales to paper mills. Alcovy Wood also arranged "stumpage" agreements when timber cutting would take just a few days. Alcovy Wood operated in this manner from October 1978 through December 1984, when all of the Rockers' stock was redeemed by Alcovy Wood. During the period 1978 to 1984, Roberts was involved in several other business ventures. In July 1979, Roberts and the Rockers formed a partnership, Rocker, Rocker, & Roberts (RRR), which invested in two tracts of timberland in Newton and Coweta counties, Georgia. Roberts sold his interest in RRR to the Rockers in December 1984 as part of an Alcovy Wood stock *106 redemption agreement. In 1980, Roberts established Alcovy Properties to invest directly in land and timber in northern Georgia. Roberts was the sole stockholder and president of Alcovy Properties and totally controlled it. Alcovy Properties acquired certain real estate in northern Georgia, some of which was later transferred to the Rockers as part of an Alcovy Wood stock redemption agreement. In March 1982, Roberts purchased the stock of Cecil T. Allgood, Inc. (Allgood), for $ 685,000. Allgood was a Gulf Oil distributorship which owned a bulk plant, two service stations, numerous tanks and pumps, and had contracts to supply fuel for many local area businesses and farms. Roberts purchased, in his individual capacity, the building and equipment and leased it back to Allgood. Roberts had two ventures with Reggie McFarland (McFarland), the owner of several real estate and development companies including Homecraft Construction and Piedmont Grading. Roberts and McFarland formed a partnership in 1982, ROMC Investments, to develop a 148-acre subdivision called Briarpatch in Covington, Georgia. Roberts sold his interest in this partnership in September 1984. Roberts and McFarland *107 also formed Snapfinger Investments, Limited (Snapfinger Investments), a joint venture in December 1982 to build 90 condominiums on a golf course 15 miles east of Atlanta. Roberts sold his interest in this venture, receiving two of the condominiums upon the disposition of his interest in the joint venture. In May 1983, Roberts and Ellen Wilbanks (Wilbanks), formed Southern Forest Products, Inc., (Southern Forest), a timber company that operated in a manner similar to Alcovy Wood. Roberts and Wilbanks each owned 50 percent of the stock of Southern Forest. Roberts and Wilbanks also formed W & R Partnership (W&R), which also operated like Alcovy Wood. In August 1983, Roberts and Henry Lassiter (Lassiter), formed Stonemont Development Corporation (Stonemont Development), to construct and operate a chain of convenience stores called Little Henry's. Roberts sold his 50-percent interest in Stonemont in December 1984 as part of an Alcovy Wood stock redemption agreement. Alcovy Wood Funds Used for Robert's Personal Benefit
Roberts ran the daily operations of Alcovy Wood. Alcovy Wood maintained two checking accounts: a payroll account and an operating account. Roberts was the *108 only authorized signatory of the operating account. The Rockers had little or no role in the activities of Alcovy Wood but were updated periodically on the company's performance by Roberts. In 1981, Roberts contracted with Homecraft to build a residence for him on 171 acres in Covington, Georgia, that Roberts purchased in November 1980 (hereinafter referred to as the "Covington house"). Homecraft acted as general contractor while Piedmont Grading was a subcontractor with several other companies and individuals hired by McFarland or Roberts. Roberts used Alcovy Wood's operating account to pay a number of suppliers and workmen for materials and labor to build Roberts' Covington house, improve Roberts' Sky Valley Resort real estate, and to pay for other personal expenditures. These expenditures were charged as "log stumpage" or other expenses on Alcovy Wood's books. For example, in 1981, Roberts used Alcovy Wood funds to pay a plumber named Ed Hilton (Hilton), for a Jacuzzi hot tub, its installation, and other plumbing work on the Covington house. Roberts wrote checks from Alcovy Wood's operating account to pay Hilton, and expensed those payments as "log stp" on the corporation's *109 books and records. Hilton never sold any timber or stumpage to Alcovy Wood or Roberts. In a similar manner, Roberts issued Alcovy Wood checks to pay Robert Holder to drill a well, install a pump, and run a water line to the Covington house. Again, Roberts expensed these payments as log stumpage on the corporate books and records. In February 1984, Roberts contracted with Crystal Blue Pool Company to build a pool at the Covington house. In partial payment for the construction of the pool, Roberts issued an $ 11,000 Alcovy Wood check made payable to "Crystal". As indicated by bank microfilm records, Crystal Blue Pool Company deposited the check without alteration. After payment was made by the bank and the check had cleared and was returned to Alcovy Wood, Roberts altered the check's payee line by adding the word "Jones" after the word "Crystal". "Crystal Jones" does not exist. The $ 11,000 was expensed as log stumpage on the books and records of Alcovy Wood. Roberts repeated this procedure for numerous construction items and materials. The parties have stipulated to a large number of payments in which, similar to the above examples, Roberts used Alcovy Wood funds for the *110 construction of or improvements to the Covington house, Sky Valley Resort properties or for other investments or personal expenditures of Roberts, while including such payments as cost of goods sold on the books of Alcovy Wood. There were several occasions where Roberts endorsed Alcovy Wood checks himself by forging the payee's signature. The three stipulations of facts fully cover these items which are all of essentially the same character, and we will not reiterate them here. Roberts also offset unreported income by causing Alcovy Wood to issue checks to Southern Forest during 1983 and 1984, which again were expensed by Alcovy Wood as log stumpage. However, Southern Forest provided no materials and performed no services to Alcovy Wood, and the payments were recorded on Southern Forest's books as loans from Roberts. Roberts subsequently received "repayment" of these amounts from Southern Forest. Roberts made capital contributions to ROMC Investments, Stonemont Development, and Snapfinger Investments by embezzling funds from Alcovy Wood in a similar manner. Roberts also caused Alcovy Wood's secretary to cash a payroll account check for $ 19,650 and to give the proceeds to Roberts. *111 Of this cash, $ 7,000 was used for legitimate Alcovy Wood business, while the balance was kept by Roberts. Roberts also sold cows during 1983, and failed to report the income earned from the sales on his 1983 tax return. In addition, Roberts diverted certain option payments made by Newton County, Georgia, that were due to Alcovy Properties for the county's option to use a 272-acre tract of land owned by Alcovy Properties as a landfill. Roberts diverted a total of five checks in the amount of $ 5,000 each. The checks were payable to Alcovy Properties, but were deposited into Roberts' personal account. The parties have also stipulated to a number of sales of properties owned by Alcovy Properties that were not reported on Alcovy Properties' Federal income tax returns for the years at issue. Petitioners' Tax Returns
Roberts employed the firm of Chaple and Ward to perform accounting services and tax return preparation. Chaple and Ward assisted in the preparation of the Roberts' 1981 joint Federal income tax return and prepared the Roberts' 1982 and 1983 joint Federal income tax returns. The firm also prepared Alcovy Wood's September 30, 1982 and 1983 Federal corporate income *112 tax returns. The accounting services and tax returns were based on information provided to Chaple and Ward by Roberts, including the check stubs from Alcovy Wood's operating account. In either October or November 1984, Alcovy Wood had its shareholders' meeting. Roberts, the Rockers, and Keith W. Chaple were present. During that meeting, Walter Rocker accused Roberts of embezzling funds from Alcovy Wood. When asked by Walter Rocker if he denied embezzling Alcovy Wood funds, Roberts said that he could not deny it. Shortly following this meeting, Chaple and Ward wrote to Roberts notifying him of the need for Roberts to file amended business and personal tax returns, as his past returns were "in jeopardy of being fraudulently filed." Roberts failed to do so. Chaple and Ward ceased doing Roberts' accounting work, and Roberts hired another accountant, James Guined (Guined), to prepare the Roberts' 1984 personal income tax return and Alcovy Wood's and Alcovy Properties' 1984 corporate income tax returns. Guined came from Athens, Georgia, and was a stranger to the Covington locale. Roberts did not inform Guined of much of the background facts of Roberts' business, financial and tax *113 activities. Despite many requests by Guined, Roberts never supplied him with a copy of the December 7, 1984 agreement with the Rockers, et al., discussed below. On December 7, 1984, the Rockers and Roberts reached an agreement regarding the redemption of the Rockers' Alcovy Wood stock. Mrs. Roberts, Alcovy Wood, Alcovy Properties, and Ellen Wilbanks were parties to the contract in addition to Roberts and the Rockers. As a result of this agreement, the Rockers received various pieces of real estate previously owned by the Roberts, RRR, Alcovy Wood, and Alcovy Properties, as well as $ 260,000 of Alcovy Wood funds. The consideration Roberts received was the release by the other parties from any lawsuits or claims they might have against him due to his embezzlement. While not a party to the above-described redemption agreement, Chaple and Ward was asked to sign, and did sign, a separate document stating that the firm had not provided any information to either the Internal Revenue Service or to the State of Georgia regarding Roberts' activities. The Roberts used the cash method of accounting for Federal income tax purposes during the years at issue. Roberts executed the Federal *114 income tax returns for Alcovy Wood and Alcovy Properties, as president of the corporations, respectively. During respondent's examination of petitioners' taxable years at issue, Roberts was evasive with respondent's agent and refused to meet again after an initial meeting. OPINION Deficiencies and Section 6653(b) Additions to Tax
Petitioners bear the burden of proving by a preponderance of the evidence that they do not owe the underlying deficiencies determined by respondent. Respondent bears the burden of proving by clear and convincing evidence that all or some part of the underpayment for each year is attributable to fraud. Sec. 7454(a); Rule 142(a) and (b); Welch v. Helvering, 290 U.S. 111 (1933); Katz v. Commissioner, 90 T.C. 1130, 1143 (1988). The only arguments made by Roberts regarding the underlying deficiencies are that Roberts "repaid the unauthorized loans" to Alcovy Wood as part of the redemption agreement, and that Roberts is entitled to deductions for the "business or trade purpose" to which the defalcations from Alcovy Wood were applied. Roberts has failed to prove either argument. The agreement *115 under which Alcovy Wood redeemed the Rockers' stock stated that the parties to the agreement relinquished all claims that they may have had against each other. Under the circumstances, it is clear that this provision was part of the consideration Roberts received for the agreement. Roberts puts forth no evidence that any of the transfers of property made pursuant to the agreement effectuated a return by Roberts of the funds he embezzled from Alcovy Wood. Nor has Roberts established or substantiated that he is entitled to deductions under section 162. Contrary to Roberts' assertion, the record shows, for example, that Roberts constructed and improved a personal residence and vacation home (no rental purpose, record, or rental loss was established), made nondeductible contributions to a partnership (RRR), section 721(a), and made nondeductible purchase option payments (any loss on expiration of the option did not occur until 1985). Sec. 1234(a)(2). Roberts has not established that he made deductible expenditures in furtherance of any business or for any business purpose. Petitioners make no argument regarding the deficiencies determined for Alcovy Properties except an unsupported *116 conclusion that "Alcovy Properties [has] met its burden and, in fact, pierced the presumption of correctness for the Notice of Deficiency". Alcovy Properties otherwise makes no substantive argument and Alcovy Wood makes no argument at all regarding respondent's determinations of deficiencies and additions to tax, and we hold that they are liable for them as determined by respondent. We hold that petitioners have failed to carry their burden with respect to the underlying deficiencies. The existence of fraud is a question of fact which is resolved upon a consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud is never presumed but must be established by some independent evidence. Beaver v. Commissioner, supra.The mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962). Fraud is defined as an intentional wrongdoing *117 designed to evade tax believed to be owing, effectuated by conduct designed to conceal, mislead, or otherwise prevent the collection of such tax. Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Because fraud can rarely be established by direct proof of the taxpayer's intention, fraud may be proved by circumstantial evidence. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Moreover, fraudulent intent may be inferred from a pattern of conduct. Spies v. United States, supra at 499. A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. Holland v. United States, 348 U.S. 121, 139 (1954); Otsuki v. Commissioner, 53 T.C. 96 (1969). In addition, fraudulent intent is more easily inferred where the taxpayer is intelligent, educated, and knowledgeable *118 about taxes. Simms v. Commissioner, 422 F.2d 340 (4th Cir. 1970), affg. T.C. Memo. 1968-298; Klingler v. Commissioner, T.C. Memo. 1987-46. Various factors or "badges of fraud" are often cited by this and other courts from which fraudulent intent may be inferred. We have considered various kinds of circumstantial evidence indicative of fraud including (1) understatement of income, (2) inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of assets, (5) failure to cooperate with the tax authorities, (6) engaging in illegal activities, and (7) dealing in cash. Holland v. United States, supra; Spies v. United States, supra; Meier v. Commissioner, 91 T.C. 273, 297-298 (1988). In this case, direct and circumstantial evidence of fraud exists, and many of the "badges of fraud" are present. Roberts admits that he used Alcovy Wood funds to pay for construction work and other improvements for his personal residences and investments and further admits that he otherwise *119 diverted Alcovy Wood funds to his other business ventures. He characterizes these defalcations as "unauthorized loans", and further claims that when he "borrowed" Alcovy Wood funds for his personal benefit, he intended to repay them. However, Roberts submits no credible evidence that establishes, furthers, or is even consistent with such a characterization. Roberts did not maintain any records regarding the "unauthorized loans" to facilitate their repayment and, in fact, never repaid any of the diverted funds. There is no evidence of contemporaneous accounting entries, memoranda, or other notations on the books and records of Alcovy Wood indicating any intent to repay the embezzled funds. Roberts proffered no evidence of any oral or written communication with Chaple and Ward, the Rockers, or Alcovy Wood's bookkeeper/secretary relating to any loans from Alcovy Wood to Roberts. In sum, the record is devoid of any evidence supporting a characterization of the embezzled funds as loans. Rather, the record is replete with evidence that Roberts concealed the true nature of the expenditures. Roberts miscoded the check stubs falsely indicating that the Alcovy Wood checks were issued *120 in payment of stumpage or other services provided to Alcovy Wood or were otherwise proper expenses of the corporation. Roberts altered checks, created fictitious payees, and otherwise surreptitiously routed funds to himself or his other investments. In doing so, Roberts knew that the mislabeled check stubs would be used to increase Alcovy Wood's cost of goods sold and thereby reduce Alcovy Wood's taxable income. Moreover, Roberts knowingly failed to report as income to him the value of materials, services, and other benefits inuring to him personally. Similarly, Roberts knowingly failed to report the gain on certain real estate sales by Alcovy Properties. Roberts was obviously aware of his duty to file tax returns for himself, Alcovy Wood, and Alcovy Properties, and of his responsibility to report all income properly taxable during the applicable periods. As Roberts correctly points out, the distinguishing characteristic of a loan is the intention of the lender and borrower that the loan be repaid. Moore v. United States, 412 F.2d 974 (5th Cir. 1969). However, the intention to repay money must be sufficiently definite, with some terms thereof *121 expressly stated or fairly implied. Jerkins v. Commissioner, T.C. Memo. 1991-571. In this case, repayment terms were neither expressly stated, nor were they fairly implied. Moreover, as we stated above, except for Roberts' self-serving testimony, the record shows that Roberts had no intention of repaying the monies he siphoned from Alcovy Wood and Alcovy Properties. To the contrary, he did everything he could to hide the embezzlement. Under the circumstances of this case, we hold that Roberts embezzled from his partly and wholely owned corporations. United States v. Durant, 324 F.2d 859 (7th Cir 1963). Cf. Hobson v. Commissioner, T.C. Memo 1992-312. Further, we hold that the embezzled funds are income to the Roberts, James v. United States, 366 U.S. 213 (1961). In addition, we hold that Roberts failed to report such income, failed to report other income which he received, caused Alcovy Wood to overstate its cost of goods sold resulting in an underreporting of income, and caused Alcovy Properties to fail to report certain income with the intent to evade *122 tax within the meaning of section 6653(b). Roberts also claims he is not liable for the additions to tax for fraud under section 6653(b) because he "reasonably relied" on the advice of his accountants. This argument has no merit. Roberts miscoded Alcovy Wood check stubs, forged payee signatures, altered checks, and otherwise attempted to cover his embezzlement. There is no evidence that the accountants played any role in the embezzlement, nor could they absolve Roberts' wrongdoing. Moreover, Roberts' fraud is imputed to the corporations, as he was the president and dominant shareholder of Alcovy Wood and was the president and sole shareholder of Alcovy Properties. Thus, we hold that Roberts and his corporations are liable for the additions to tax under section 6653(b) as determined by respondent. Moore v. Commissioner, T.C. Memo. 1977-275, affd. 619 F.2d 619 (6th Cir. 1980). Section 6661 Additions to Tax
We also must consider whether petitioners are liable for additions to tax under section 6661 as determined by respondent. Section 6661(a) provides for an addition of 25 percent of an underpayment attributable *123 to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498, 500-502 (1988). In the case of an individual, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1)(A). The same is true for corporations other than subchapter S corporations except that a substantial understatement is defined as the greater of 10 percent of the tax required to be shown on the return, or $ 10,000. Sec. 6661(b)(1)(B). Petitioners made no argument at trial or on brief regarding this addition to tax except to say that they reasonably relied on the advice of their accountants. However, there is no such defense or exception to the section 6661 additions to tax, even if we were to find that petitioners so relied, which we expressly do not. Based on our holdings above and the tax returns submitted pursuant to the parties' stipulations, the addition to tax under section 6661 is applicable for all of the years determined by respondent. Respondent's Motion to Strike
In their reply brief, petitioners raise for the first time two new issues: that petitioner *124 Cheryl W. Roberts is an innocent spouse within the meaning of section 6013(e), and that respondent's statutory notices of deficiency are barred by the statute of limitations in section 6501(a). Respondent moves under Rule 52 to strike from petitioners' reply brief those portions raising those issues at this late date, claiming that they are untimely. We agree with respondent. Rule 39 requires that any statute of limitations defense be specially pleaded. Neither issue was pleaded nor argued at trial by petitioners. There are no requested findings of fact regarding these issues by either party, and respondent has had no fair opportunity to respond to those issues due to the time petitioners raised them. We hold that petitioners' failure to raise timely, in accordance with this Court's Rules, the affirmative defenses of innocent spouse and statute of limitations prevents these issues from being raised after trial in petitioners' reply brief. Thus, we hereby strike from the record the last two sentences on page 21, pages 22 and 23 in their entirety, and the first two paragraphs on page 24 *125 of petitioners' reply brief. Decisions will be entered for respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Alcovy Wood Products, Inc., docket No. 24258-90, and Alcovy Properties, Inc., docket No. 24259-90.↩